**Robert WARNER, Plaintiff–Appellee,**

v.

**ORANGE COUNTY DEPARTMENT OF PROBATION, Defendant–Appellant.**

No. 1760, Docket 95–7055.

United States Court of Appeals, Second Circuit.

Argued July 20, 1995.

Decided Sept. 9, 1996.

As Amended May 14, 1997.

Order Vacating Decision and Remanding Case May 14, 1997.

Robert N. Isseks, Goshen, NY (Alex Smith, Middletown, NY, of counsel), for Plaintiff–Appellee.

Richard B. Golden, Orange County Attorney, Goshen, NY (M. Kevin Coffey, Antoinette Gluszak, Laurie T. McDermott, of counsel), for Defendant–Appellant.

Before: WINTER, LEVAL, and CALABRESI, Circuit Judges.

LEVAL, Circuit Judge:

Orange County Department of Probation ("OCDP"), the defendant, appeals from a decision of the district court awarding declaratory judgment, nominal damages of one dollar, and attorney's fees to plaintiff Robert Warner in his civil action under 42 U.S.C. § 1983. Warner claimed that a probation condition imposed on him as part of a criminal sentence, which required him to attend meetings of Alcoholics Anonymous ("A.A."), forced him to participate in religious activity in violation of the First Amendment's Establishment Clause, and that OCDP was responsible, in part because it recommended the A.A. therapy to the sentencing court as a condition of probation. OCDP contends it cannot be liable for Warner's exposure to A.A. pursuant to a sentence imposed by the court. We reject OCDP's arguments, and affirm the judgment.

*Background*

On November 13, 1990, Warner pleaded guilty to driving drunk and without a license in violation of New York law. N.Y. Veh. & Traf. Law §§ 511(2), 1192(1)(McKinney 1986 & Supp.1996). This was his third alcohol-related driving offense in a period of little

more than a year. Judge David L. Levinson, of the Town of Woodbury's Justice Court in Orange County, New York, accepted the plea and ordered the Orange County Department of Probation to prepare a presentence report.

The OCDP's report recommended a term of probation with six special conditions, which the department routinely recommends in cases of defendants with alcohol problems. These included that the probationer "totally abstain from the use of intoxicating beverages," avoid "establishment[s] where the primary business is the sale or consumption of alcohol," and, as the fifth condition, that he "attend Alcoholics Anonymous at the direction of [his] probation officer."

These recommended special conditions were set forth on a standard form rider which OCDP routinely provided to sentencing judges in such cases. Judge Levinson sentenced Warner to three years of probation, imposing the special conditions recommended by the OCDP. In imposing these special conditions, Judge Levinson endorsed the Probation Department's standard form.

Warner attended A.A. meetings at the direction of his probation officer, Neal Terwilliger, from November 1990 through September 1992. However, in January of 1991, Warner complained to Terwilliger that, as an atheist, he found the religious nature of the A.A. meetings objectionable. The probation officer instructed Warner to continue his attendance. Some months later, Terwilliger determined that Warner lacked sufficient commitment to the program; he directed Warner to attend "Step meetings" and to seek another more advanced A.A. member as a "sponsor" to give him guidance and encourage his adherence to the program. The Step meetings were devoted to discussion of A.A.'s "Twelve Steps," which represented the heart of the therapy program.

The district court found that the program Warner was required to attend involved a substantial religious component. For example, the "Twelve Steps" included instruction that participants should "believe that a Power greater than ourselves could restore us"; "[make] a decision to turn our will and our lives over to the care of God *as we [understand] Him* "; "[a]dmit[ ] to God ... the exact nature of our wrongs"; be "entirely ready to have God remove all these defects ... [and] ask Him to remove our shortcomings"; and "[seek] through prayer and meditation to improve our conscious contact with God, as we [understand] Him."

Group prayer was a common occurrence at the meetings Warner attended. They frequently began with a religious invocation, and always ended with a Christian prayer. The district court found that the program "placed a heavy emphasis on spirituality and prayer, in both conception and in practice."

In July of 1992, Warner filed a motion in the Town of Woodbury Justice Court challenging the constitutionality of his consignment to A.A. The OCDP—after meeting with representatives from the local district attorney's office—responded that it could offer Warner therapy in another program. The municipal court judge then directed that nonreligious alternatives be made available and dismissed Warner's motion as moot. Warner subsequently brought this action in federal district court, seeking damages, as well as a declaratory judgment that OCDP had violated his First Amendment rights. After a bench trial, the district court found that compelling Warner to attend the program violated the Establishment Clause, and further determined that the OCDP was liable for the constitutional injury, notwithstanding that it was the sentencing judge—not the Probation Department—who had imposed the condition of A.A. participation. The court, however, found that Warner's claims of financially compensable injury were not convincing, and thus awarded nominal damages in the amount of one dollar, plus attorney's fees.

## Discussion

OCDP asserts that the trial court committed a variety of errors. First, it claims that it cannot be liable because, under New York law, the determination of probation conditions is solely the responsibility of the sentencing judge. Second, it contests the district court's conclusion that requiring Warner to attend A.A. violated the Establishment

Clause.[1] We disagree.

## I. OCDP's Responsibility for the Sentence

To establish OCDP's liability for his sentence under 42 U.S.C. § 1983, Warner must first demonstrate that his injury resulted from a custom or policy of Orange County, as opposed to an isolated instance of conduct. Monell v. Department of Social Servs., 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 162–67, 90 S.Ct. 1598, 1611–13, 26 L.Ed.2d 142 (1970)(describing congressional intent in creating liability for custom or practice). The OCDP's recommendation that Warner be required to participate in A.A. therapy was unquestionably made pursuant to a general policy. This was one of six standard special conditions set forth on a form captioned "Additional Conditions of Probation Pertaining to Alcohol," which OCDP routinely submitted to sentencing judges in alcohol cases.

■ OCDP argues that it is nonetheless not legally responsible because it was the judge's sentencing decision, not the Probation Department's recommendation, that caused the harm. The County is certainly correct that in cases brought under § 1983 a superseding cause, as traditionally understood in common law tort doctrine, will relieve a defendant of liability. Jeffries v. Harleston, 52 F.3d 9, 14 (2d Cir.), cert. denied, —— U.S. ——, 116 S.Ct. 173, 133 L.Ed.2d 114 (1995); Gutierrez–Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir.1989); Wagenmann v. Adams, 829 F.2d 196, 212 (1st Cir.1987). "[T]he Supreme Court has made it crystal clear that principles of causation borrowed from tort law are relevant to civil rights actions brought under section 1983." Buenrostro v. Collazo, 973 F.2d 39, 45 (1st Cir.1992); see Malley v. Briggs, 475 U.S. 335, 344 n. 7, 106 S.Ct. 1092, 1098 n. 7, 89 L.Ed.2d 271 (1986); Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961).

■ However, tort defendants, including those sued under § 1983, are " 'responsible for the natural consequences of [their] actions.' " Malley, 475 U.S. at 344 n. 7, 106 S.Ct. at 1098 n. 7 (quoting Monroe, 365 U.S. at 187, 81 S.Ct. at 484). As the First Circuit has explained, an actor may be held liable for "those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties." Gutierrez–Rodriguez, 882 F.2d at 561 (citations omitted).[2]

A complex chain of events led to Warner's participation in religious exercises at the A.A. meetings. Two candidates present themselves as possible superseding causes of his injury that might relieve OCDP of liability: First, as the County argues, the judge's sentencing determination; second, the actions of the A.A. chapter that Warner attended.

---

**1.** In its reply brief on appeal, Orange County for the first time raised the question whether it might be immune from liability for the acts of its probation officer. Nothing in the record filed on appeal by the defendant indicates that Orange County ever raised a defense of immunity before the district court. What is more, the County's failure to raise the issue on appeal in its initial brief deprived Warner of the opportunity to dispute the question and deprived the court of the benefit of both sides' briefing. An issue raised for the first time on appeal is not properly before this court, and we will not consider it. Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); Hutton Const. Co., Inc. v. County of Rockland, 52 F.3d 1191, 1193 (2d Cir.1995).

**2.** The First Circuit went on to state:

A negligent defendant will not be relieved of liability by an intervening cause that was reasonably foreseeable, even if the intervening force may have "directly" caused the harm. An "unforeseen and abnormal" intervention, on the other hand, "breaks the chain of causality," thus shielding the defendant from liability.

See also Stagl v. Delta Airlines, Inc., 52 F.3d 463, 473–74 (2d Cir.1995)(under New York law liability turns upon whether the intervening act is "a normal and foreseeable consequence of the situation created by the defendant's negligence")(quoting Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980)); Bonsignore v. City of New York, 683 F.2d 635, 638 (2d Cir.1982)(same); White v. Roper, 901 F.2d 1501, 1506 (9th Cir.1990); Marsh v. Barry, 824 F.2d 1139, 1143 (D.C.Cir.1987)(question in § 1983 case where intervening cause is alleged is "whether the resulting harm was reasonably foreseeable"); Springer v. Seaman, 821 F.2d 871, 876–77 (1st Cir.1987); Restatement (Second) Torts §§ 442A, 442B, 443, 447 (1965).

## A. *Act of the Sentencing Judge*

 As the OCDP correctly points out, under New York law the determination of probation terms is a judicial task, which may not be delegated to probation officers. *People ex. rel. Perry v. Cassidy*, 23 A.D.2d 706, 257 N.Y.S.2d 228, 229 (1965); *see also People v. Fuller*, 57 N.Y.2d 152, 455 N.Y.S.2d 253, 256, 441 N.E.2d 563 (1982)(sentencing court must independently decide how much of probation department report to adopt). The probation department therefore argues that its role was purely advisory, and cannot have been the proximate cause of Warner's injury.

The Supreme Court, however, in *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), rejected a similar argument. *Malley* was a civil rights action under § 1983 against a state trooper who had procured a warrant for the plaintiff's arrest by submitting an affidavit. Plaintiff claimed the affidavit was legally insufficient. The district court had dismissed the case, believing the police officer to be absolutely immune when swearing out a warrant. The Court of Appeals reversed, resuscitating the action. The officer argued in the Supreme Court not only that he was immune, but also that he was shielded from responsibility by his entitlement to rely on the judgment of the judicial officer in finding probable cause and issuing the warrant. The Supreme Court ruled that such reliance was not justified if "a reasonably well-trained officer in [the same] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* at 345, 106 S.Ct. at 1098. If such was the case, the officer's application for a warrant was not objectively reasonable, because it risked an unnecessary danger of unlawful arrest. "It is true," the Court observed,

> that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But

ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this damage by exercising reasonable professional judgment.

*Id.* Commenting on the claim that the judge's decision to issue the warrant broke the "causal chain" between the application and the wrongful arrest, the Court noted that such an argument was "inconsistent with our interpretation of § 1983," which makes defendants " 'responsible for the natural consequences of [their] actions.' " *Id.* at 344 n. 7, 106 S.Ct. at 1098 n. 7 (quoting *Monroe*, 365 U.S. at 187, 81 S.Ct. at 484); *see also Gutierrez–Rodriguez*, 882 F.2d at 561 (defendants in § 1983 cases liable for consequences caused by "reasonably foreseeable intervening forces").

 The circumstances in *Malley* were more favorable than those here to the argument of exoneration by reason of the intervening decision of the judge. That is because a police officer applying for an arrest warrant appears in a partisan role. The magistrate to whom the application is addressed is automatically on notice that the application comes from an interested party and therefore knows that scrutiny is warranted. The probation officer, on the other hand, is not a partisan advocate aligned with either the prosecution or the defendant. He is a neutral adviser to the court.[3] *Schiff v. Dorsey*, 877 F.Supp. 73, 77 & n. 1 (D.Conn. 1994) (describing analogous role of federal probation officer; "the sentencing judge's need for complete and accurate information about an offender requires that he enjoy a relationship of the utmost trust and confidentiality with the federal probation officer"); *see also* Sharon Bunzel, Note, *The Probation Officer and the Federal Sentencing Guidelines: Strange Philosophical Bedfellows*, 105

---

3. New York law prohibits a court from sentencing a defendant to a term of probation not agreed upon by the parties without first considering the probation department's pre-sentence report ("PSR"). N.Y.Crim. Proc. § 390.20 (McKinney 1994). PSRs include not only material the department thinks appropriate, but also any other information the court may direct the investiga-tion to include. *Id.* at § 390.30(3)(a). Once written, PSRs become confidential court documents. *Id.* at § 390.50(1). Although not formally located within the judicial branch, *Bowne v. County of Nassau*, 37 N.Y.2d 75, 371 N.Y.S.2d 449, 452, 332 N.E.2d 323 (1975), New York statutes intimately tie the probation department to the sentencing process.

Yale L.J. 933, 945 (1995) (describing historical role of probation officer as "neutral information gatherer with loyalties to no one but the court"). The district court noted a high likelihood of court adoption of such recommendations by the probation department.

Given the neutral advisory role of the probation officer toward the court, it is an entirely "natural consequence[ ]," *Malley,* 475 U.S. at 344 n. 7, 106 S.Ct. at 1098 n. 7, for a judge to adopt the OCDP's recommendations as to a therapy provider without making an independent investigation of the qualifications and procedures of the recommended provider. Such action by a judge is neither "abnormal" nor "unforeseen." *Gutierrez–Rodriguez,* 882 F.2d at 561.

Court adoption of the probation officer's recommendation is particularly likely when the recommendation deals with a provider of therapy. Judges are unlikely to possess particularized information about the relative characteristics and merits of different providers of therapy. For this type of information, courts generally rely heavily on probation department recommendations.[4]

Whether it was reasonably foreseeable that the sentencing judge would adopt the OCDP's recommendation that Warner attend A.A. is a question of fact. *See Springer,* 821 F.2d at 876; *Restatement (Second) of Torts* § 453 cmt. b (1965). The district judge found a high likelihood that a judge would follow such a recommendation of the probation department. We review this determination for clear error, and find none. Fed. R.Civ.P. 52(a); *Anderson v. City of Bessemer City,* 470 U.S. 564, 572, 105 S.Ct. 1504, 1510–11, 84 L.Ed.2d 518 (1985).

Finally, the dissent argues that, because Warner—following the advice of his attorney—sampled the A.A. sessions prior to sentence and made no objection to their religious content at the time of sentence, the probation department's recommendation was not a proximate cause of the injury. The dissent argues also that Warner's conduct constituted consent. We are not persuaded by either argument.

In the first place, both arguments turn on a factual question. Any ruling that Warner consented to the religious conditions of his probation, or knowingly declined to object to them, must depend on a factual finding that Warner, in his few sessions at A.A. prior to sentencing, had learned the nature and extent of the religious content of the program. If Warner was unaware of that content or the extent of its presence in the treatment, he cannot be expected to have objected or appealed on that basis. There was no finding by the district judge, however, that Warner did have such knowledge, and the record provides scant evidence upon which such a finding could have been based.

There was very little effort by the County at trial to explore Warner's awareness before sentence of the religious nature of the program. The evidence showed merely that Warner had attended about four meetings, that the Twelve Steps had been posted on a billboard and had been discussed, and that the meetings ended in a prayer. Thus, while Warner was on notice that the program had some religious content, there was no showing that he was aware, prior to sentence, of its degree or intensity. The evidence suggests that his awareness increased later on when his probation officer, finding that he lacked

---

4. The dissent suggests that we malign New York's judiciary by finding that the sentencing judge merely "rubber stamped" the probation office recommendation. We neither find nor imply any such thing. First, to say, as we do, that it was reasonably foreseeable that the sentencing judge would accept probation's recommendation on this point does not imply that the judge did not make his own determination. Second, our discussion relates only to the selection of a therapy provider and not at all to the court's determination of appropriateness of probation and of alcohol therapy. The selection of a provider of therapy is not an issue of law, and courts are ill equipped to perform this task without relying

heavily on recommendations. For sentences involving alcohol abuse therapy, furthermore, the probation department's role is particularly significant. New York law allows a judge to sentence a defendant to a term of probation conditioned on "participat[ion] in an alcohol ... abuse program ... *approved by the court after consultation with the local probation department having jurisdiction,* or such other public or private agency as the court determines to be appropriate." N.Y. Penal § 65.10(2)(e)(emphasis added). The statutory requirement that the judge seek advice in approving a particular alcohol abuse program suggests judicial reliance on the department's expertise in selecting a program.

commitment, directed him to attend "step meetings" (where the Twelve Steps were more intensively discussed) and to obtain a "sponsor" within the program. The dissent's conclusion that Warner consented is not based on any factual finding by the district court. Nor is it based on evidence that compels such a finding.

Had Warner either suggested A.A. as a condition of probation, or somehow communicated his agreement to such a condition, different considerations would apply. But the mere fact of his brief presentence attendance, designed to demonstrate his commitment to rehabilitation, did not amount to a consent to the aspect of the sentence that essentially required him to attend religious exercises.[5] A defendant facing sentence may well undertake daily attendance at mass in the hope of convincing the sentencing judge of his penitence. We do not see how such conduct, without more, could be construed as consent to a sentence of probation conditioned on daily attendance at mass.

### B. *Acts of Alcoholics Anonymous*

■ The immediate cause of Warner's injury was not the sentencing judge's decision to send him to an alcohol rehabilitation program, but rather the actions of those who conducted the A.A. meetings Warner attended. Whether the religion-infused meetings should be regarded as a break in the causal chain between OCDP's action and plaintiff's injury, thus shielding the probation department from liability, depends, again, upon whether those actions were reasonably foreseeable to OCDP at the time it made the recommendation. *Gutierrez–Rodriguez,* 882 F.2d at 561; *see also Malley,* 475 U.S. at 344 n. 7, 106 S.Ct. at 1098 n. 7.

On this point, the district court made no findings. The probation department was, of course, obligated to use reasonable care to inform itself of the suitability of therapy programs it recommended to the court, especially where such recommendations were repeatedly made as a matter of policy. Furthermore, the parties stipulated prior to trial that OCDP, when it formulated its policy of recommending A.A., was aware of the program's Twelve Steps and of their religious character. Accordingly, there can be no question as to the reasonable foreseeability of the religious nature of the program OCDP was recommending for Warner; OCDP was well aware of it. The actions of A.A. cannot be considered to have broken the chain of causation. OCDP is responsible for any resulting injury to Warner's First Amendment rights.

## II. *Establishment Clause*

■ The County also argues that forcing Warner to attend Alcoholics Anonymous did not violate the First Amendment's Establishment Clause. We disagree. The Supreme Court has repeatedly made clear that "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Lee v. Weisman,* 505 U.S. 577, 587, 112 S.Ct. 2649, 2655, 120 L.Ed.2d 467 (1992) (quoting *Lynch v. Donnelly,* 465 U.S. 668, 678, 104 S.Ct. 1355, 1361–62, 79 L.Ed.2d 604 (1984)); *see County of Allegheny v. American Civil Liberties Union,* 492 U.S. 573, 591, 109 S.Ct. 3086, 3099–3100, 106 L.Ed.2d 472 (1989); *Everson v. Board of Educ.,* 330 U.S.

---

5. The Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), does not bar Warner's § 1983 claim. *Heck* ruled that a prisoner's claim for damages based on his allegedly unconstitutional prosecution and conviction was not cognizable under § 1983 because his conviction had not been invalidated. *Id.* at 486–87, 114 S.Ct. at 2372. *Heck*'s rule bars a state convict from suing under § 1983 when his conviction remains outstanding and cannot be reconciled with his claim under § 1983. The rule applies most clearly where the defendant has been convicted of a crime, but contends in his § 1983 action that he was prose-

cuted for an unconstitutional reason. Such a defendant's outstanding conviction demonstrates that he was prosecuted with good reason. These considerations have no application to Warner's case. His guilt is in no way incompatible with his claim that he may not lawfully be required to take alcohol therapy in a religious program. But more importantly, there can be no incompatibility because the illegal part of Warner's sentence had been eliminated before he brought his § 1983 action. There is no suggestion in *Heck* that his suit may not be maintained in these circumstances.

1, 15–16, 67 S.Ct. 504, 511–12, 91 L.Ed. 711 (1947); *see also Katcoff v. Marsh,* 755 F.2d 223, 231–32 (2d Cir.1985) (observing that army chaplaincy program "meets the requirement of voluntariness by leaving the practice of religion solely to the individual soldier, who is free to worship or not as he chooses without fear of any discipline or stigma").

The A.A. program to which Warner was exposed had a substantial religious component. Participants were told to pray to God for help in overcoming their affliction. Meetings opened and closed with group prayer. The trial judge reasonably found that it "placed a heavy emphasis on spirituality and prayer, in both conception and in practice." We have no doubt that the meetings Warner attended were intensely religious events.[6]

There can be no doubt, furthermore, that Warner was coerced into participating in these religious exercises by virtue of his probation sentence. Neither the probation recommendation, nor the court's sentence, offered Warner any choice among therapy programs. The probation department's policy, its recommendation, and its printed form all directly recommended A.A. therapy to the sentencing judge, without suggesting that the probationer might have any option to select another therapy program, free of religious content. Once sentenced, Warner had little choice but to attend the A.A. sessions. If Warner had failed to attend A.A., he would have been subject to imprisonment for violation of probation. *See* N.Y. Penal Law §§ 60.01(4), 65.00(2) (McKinney 1987); N.Y. Veh. & Traf. Law §§ 511(2), 1192(1) (McKinney 1986 & Supp.1996).

Had Warner been offered a reasonable choice of therapy providers, so that he was not compelled by the state's judicial power to enter a religious program, the considerations would be altogether different. Our ruling depends, as in *Lee,* on the "fundamental limitation[ ] imposed by the Establishment Clause" that bars government from "coerc[ing] anyone to support or participate in religion or its exercise." 505 U.S. at 587, 112 S.Ct. at 2655. In circumstances similar to our case, the New York Court of Appeals recently reached the same conclusion. *Griffin v. Coughlin,* 88 N.Y.2d 674, 649 N.Y.S.2d 903, 673 N.E.2d 98 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 681, 136 L.Ed.2d 607 (1997). In *Griffin,* the New York court held that a prisoner's family visiting privileges may not be conditioned on participation in a treatment program that adopts the "religiousoriented practices and precepts of Alcoholics Anonymous." *Id.* at 904, 673 N.E.2d 98. The court emphasized that it was not proscribing A.A. programs offered to prisoners on a voluntary basis. *Id.* at 915, 673 N.E.2d 98. It was the coercive circumstances, conditioning a desirable privilege on the prisoner's participation in a religious program, without alternative, that drove the New York court to find a violation of the Establishment Clause.[7] Similarly, the Seventh Circuit has ruled recently that where inmates were required to attend a substance abuse program with explicit religious content on pain of being rated a higher security risk and suffering adverse parole effects, the state impermissibly coerced participation in a religious program in violation of the Establishment Clause. *Kerr v. Farrey,* 95 F.3d 472 (7th Cir. 1996)("[I]n general, a coercion-based claim indisputably raises an Establishment Clause question." *Id.* at 479).

Orange County argues that even if Warner was forced to attend the meetings, he was not required to participate in the religious exercises that took place. The County argues that, as a mature adult, Warner was

---

**6.** As noted above, the district court made no finding on OCDP's awareness of the religious nature of the A.A. program. We nonetheless found OCDP's responsibility by reason of the stipulation of the parties that OCDP knew the religious nature of A.A.'s Twelve Steps. The district judge's finding of a violation of the Establishment Clause was based in part on several factors, recited above, that were not included in the Stipulation covering OCDP's knowledge— particularly the prayers. Although there was no finding that OCDP knew (or should have known) of the prayers, the finding of Establishment Clause violation and of OCDP's responsibility are adequately supported by the stipulated facts.

**7.** *See also O'Connor v. California,* 855 F.Supp. 303 (C.D.Cal.1994)(no Establishment Clause violation where probationers were offered a choice between A.A. and a secular program).

less susceptible to such pressure than the children who were required to stand in respectful silence during a school prayer in *Lee v. Weisman*, 505 U.S. at 591–95, 112 S.Ct. at 2658–59; it points out that the Supreme Court expressly questioned whether the obligation imposed by the school in *Lee* might have been constitutionally tolerable "if the affected citizens [had been] mature adults." *Id.* at 593, 112 S.Ct. at 2658.

We do not find Orange County's argument convincing. Although it is true Warner was more mature, his exposure was more coercive than the school prayer in *Lee*. The plaintiff in *Lee* was subjected only to a brief two minutes of prayer on a single occasion. Warner, in contrast, was required to participate in a long-term program of group therapy that repeatedly turned to religion as the basis of motivation. And when he appeared to be pursuing the Twelve Steps of the A.A. program with insufficient zeal—"Thirteen Stepping" in A.A. parlance—the probation officer required that he attend "Step meetings" to intensify his motivation. Warner was also paired with another member of A.A. as a method of enhancing his indoctrination into the group's approach to recovery from alcoholism. Most importantly, failure to cooperate could lead to incarceration. The fact that Warner managed to avoid indoctrination despite the pressure he faced does not make the County's program any less coercive, nor nullify the County's liability.

The County argues further that the nonsectarian nature of the A.A. experience immunizes its use of religious symbolism and practices from Establishment Clause scrutiny. The argument is at the very least factually misleading, for the evidence showed that every meeting Warner attended included at least one explicitly Christian prayer. Furthermore, the claim that non-sectarian religious exercise falls outside the First Amendment's scrutiny has been repeatedly rejected by the Supreme Court. As the Court made clear in *Board of Education of Kiryas Joel v. Grumet*, 512 U.S. 687, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994), "a principle at the heart of the Establishment Clause [is] that government should not prefer one religion to another, or religion to irreligion." *Id.* at 703, 114 S.Ct. at 2491; *see also Allegheny*, 492 U.S. at 591, 109 S.Ct. at 3099–3100; *School Dist. of Abington Township v. Schempp*, 374 U.S. 203, 216–17, 83 S.Ct. 1560, 1568–69, 10 L.Ed.2d 844 (1963).

Similarly, the County's reliance on *Marsh v. Chambers*, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), is unavailing. In *Marsh*, the Supreme Court held that the Nebraska state legislature did not violate the Establishment Clause by commencing its sessions with a sectarian prayer. That opinion relied heavily on the long tradition of public prayer in this context. *Id.* at 786–90, 795, 103 S.Ct. at 3333–35, 3338 (noting "unbroken practice for two centuries in the National Congress"). The Court in *Lee* noted the significant differences between the opening ceremony of a state legislative session where adults are free to "enter and leave with little comment and for any number of reasons" and the powerful emotional compulsion for a child to be present at her high school graduation. *Lee*, 505 U.S. at 595–97, 112 S.Ct. at 2660. The differences between the invocation at a session of the state legislature and Warner's compulsory adherence to the A.A. program are even more obvious.[8]

Resolving questions as to the reach of the Establishment Clause "of necessity [requires] line-drawing, ... determining at what point a dissenter's rights of religious freedom are infringed by the State." *Id.* at

---

8. The parties also offer analyses of this case within the framework of *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). *Compare Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 395 n. 7, 113 S.Ct. 2141, 2148 n. 7, 124 L.Ed.2d 352 (1993)(noting ongoing viability of *Lemon) with Lee*, 505 U.S. at 643–45, 112 S.Ct. at 2685 (Scalia, J., dissenting)(noting criticism of *Lemon) and Lamb's Chapel*, 508 U.S. at 396–400, 113 S.Ct. at 2149–50 (Scalia, J., concurring)(same). Whatever other tests may be applicable in the Establishment Clause context, the Supreme Court has made clear that "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise." *Lee*, 505 U.S. at 587, 112 S.Ct. at 2655. Because sending Warner to A.A. as a condition of his probation, without offering a choice of other providers, plainly constituted coerced participation in a religious exercise, we find a violation of the Establishment Clause.

598, 112 S.Ct. at 2661. We conclude that the constitutional line was crossed here.

\* \* \*

■ Notwithstanding our conclusion that Warner's First Amendment rights were violated, we have misgivings about awards of damages for such violations. At the time the Orange County Probation Department recommended sending Warner to A.A., there were no court decisions suggesting that this was an abridgement of constitutional rights. Furthermore, it is clear that, in adopting its policy of sending alcoholic defendants like Warner to A.A., the department's purpose was not to promote religion but to help free alcoholics from addiction by sending them to a program that has been famously successful. In these circumstances, the arguments in favor of good faith immunity are impressive.[9] The prospect of heavy liabilities falling on well-intentioned officials or governmental entities for such conduct is an unhappy one. Furthermore, although the conduct of the OCDP is found to be impermissible under the Constitution, the injury suffered by Warner was minimal. The fact that a government agency acts in a manner forbidden by the Constitution does not necessarily mean that the "victim" has suffered a meaningful injury that would justify a sizeable damage award. The district court's assessment of Warner's damages at one dollar seems to us appropriate. Had substantial damages been awarded, we would have given serious thought to an order of remittitur.[10]

## Conclusion

We have considered Orange County's other claims, and find them to be without merit. The judgment of the district court is affirmed.

WINTER, Circuit Judge, dissenting:

I respectfully dissent.

The pertinent facts concerning Warner's plea and sentencing are not in dispute. He was arrested and pled guilty to his third alcohol-related driving offense in a year. Prior to meeting with the probation officer who would recommend a sentence, Warner voluntarily began to attend Alcoholics Anonymous meetings. This was on the advice of his lawyer, who, according to Warner's testimony, believed "that the court would look upon me more favorably in the sentencing procedure if I can show that I was pursuing a program of rehabilitation." The probation officer subsequently recommended to the sentencing court that Warner continue his ongoing attendance at A.A. meetings as a special condition of probation. The sentencing judge, who is obliged by state law to make an independent sentencing decision, imposed that condition. Warner registered no objection at the sentencing hearing and took no appeal. Later, he moved the sentencing court to relieve him of any obligation to attend meetings with a religious component and was quickly accommodated with a nonreligious counseling program. Based on these facts, my colleagues hold that the county probation authority may be sued for damages under Section 1983 for violating the Establishment Clause.

My dissent is based on two of the available grounds. First, Warner forfeited or waived his claim or, applying tort law, consented to the probation officer's alleged intentional tort of recommending to the court attendance at A.A. meetings as a condition of probation. Indeed, Warner voluntarily began attendance at A.A. meetings before any involvement by the probation office in order to convince the sentencing judge that his voluntary selection of this particular rehabilitative program obvi-

---

9. *But see Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), which held that municipalities do not benefit from the qualified immunity of their officers. *See also Reed v. Village of Shorewood,* 704 F.2d 943, 953 (7th Cir.1983)(extending the rule of *Owen* regarding qualified immunity to find a municipality potentially liable for its officers' executive acts, though the officers themselves were protected by absolute immunity).

10. *See Gasperini v. Center for Humanities, Inc.,* —— U.S. ——, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (Consistent with Seventh Amendment's prohibition on reexamination of jury verdicts, once district court has applied proper legal standard in determining whether jury award is excessive, United States courts of appeals may review district court's denial of remittitur for abuse of discretion and direct grant thereof.).

ated the need for a stiffer sentence. Moreover, the judge exercised his exclusive authority to determine what sentence should be imposed. The imposition of the sentence by the court was, therefore, an independent cause that superseded the recommendation of the probation officer in causing the injuries. Second, the invocation of the Establishment Clause, rather than the Free Exercise Clause, puts into play a principle that portends changes in our penal system that are not required, in my view, by the Constitution.

## I

I turn first to the consent and causation issues.

This lawsuit is an instance of remarkable gall. Warner voluntarily selected and began attendance at A.A. meetings on the advice of counsel in order to impress the sentencing court with his determination to overcome his alcoholism. Now he complains that a subsequent recommendation of a probation officer that he attend such meetings entitles him to monetary damages.

Although we do not have the minutes of the sentencing hearing, Warner's testimony in the district court stated that his ostensible desire to attend A.A. meetings was to be used as a plus in his favor in persuading the sentencing court to be lenient. The judge thus imposed a condition of probation embraced by Warner on his own initiative. Warner never indicated to the sentencing court his view that a condition of probation requiring attendance at A.A. meetings rendered the proposed sentence unconstitutional. Nor did Warner appeal from the sentence imposed.

By any measure known to me, Warner's conduct was a forfeiture or waiver, *see Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (objection waived ab-

sent showing of cause), just as the County's failure to assert the defense of immunity waived that issue. Even if we apply common law tort doctrine, Warner's conduct constituted consent to an intentional tort, a full defense under New York law. *See Van Vooren v. Cook*, 273 A.D. 88, 75 N.Y.S.2d 362 (1947); *see also Prosser and Keeton on the Law of Torts* § 18. I would hold, therefore, that his claim for damages is barred.

Even if the principles relating to injuries caused by negligence relied upon by my colleagues are applied, Warner's claim fails. Warner's initiative in voluntarily selecting and attending A.A. meetings and his failure to bring his present claim to the court's attention were the cause of whatever constitutional harm he suffered from the recommendation of the probation officer.[1] As his successful petition for state collateral review under N.Y.Crim. Proc. L. § 440.20(1) and the recent decision in the New York Court of Appeals in *Griffin v. Coughlin*, 88 N.Y.2d 674, 649 N.Y.S.2d 903, 673 N.E.2d 98 (1996), demonstrate, relief was his for the asking.

I also cannot agree with the "finding" that the sentencing judge did not make the independent judgment required of him by state law, *see People ex rel. Perry v. Cassidy*, 23 A.D.2d 706, 257 N.Y.S.2d 228, 229 (1965), and that that judgment was not, in the jargon of negligence law, a superseding cause of Warner's injuries. In my view and that of others, *see People ex rel. Brown v. La Vallee*, 13 A.D.2d 556, 211 N.Y.S.2d 728, 729 (1961); *Honeycutt v. Ward*, 612 F.2d 36, 41 (2d Cir.1979), *cert. denied*, 446 U.S. 985, 100 S.Ct. 2969, 64 L.Ed.2d 843 (1980), a heavy presumption of correctness attends proceedings such as the one before us where no error was brought to the attention of the sentencing judge.[2] My colleagues, and the district judge, indulge in the contrary pre-

---

1. I do not mean to suggest that, if the constitutional challenge were unsuccessfully brought to the court's attention, Warner's suit against the probation authority would have merit. Rather, an appeal—to the United States Supreme Court if necessary—would have been in order.

2. I need not reach the issue given the facts of this case, but there is a strong argument to be made that, where the sentencing judge cannot under state law delegate the power to determine a sentence to probation officers—as in New York— an illegal delegation is itself a superseding cause and a defendant's remedy is an appeal rather than a Section 1983 action.

sumption, namely, that acceptance of the sentencing recommendation of a probation officer as to sources of treatment is merely "rubberstamping." They do this notwithstanding testimony that New York judges frequently reject special conditions of probation recommended by probation authorities.[3] They also ignore the possibility that recommendations of probation officers may be tailored to the known views of judges, creating a false appearance of rubberstamping.[4]

Moreover, as noted, the record is not silent as to whether the particular sentencing judge would have imposed the requirement of attendance at A.A. meetings had Warner indicated his concerns about the religious aspects of A.A. In fact, it fairly shouts that the judge would have rejected the condition. After sentencing, Warner complained to the probation officer about the religious aspects of A.A. At this point, of course, the officer lacked power to alter the sentence.[5] Warner then, for the first time, challenged the sentence by filing a petition under N.Y.Crim. Proc. L. § 440.20(1) (McKinney 1995) to set aside the pertinent part of his sentence on the ground that it was invalid. The court ruled that Warner could comply with the conditions of probation by going to a non-religious alcohol counseling program and denied the petition as moot. Indeed, Warner's complaint alleged that "[a]s a result of the Town of Woodbury Justice Court's Decision and Order, plaintiff is currently no longer required by his probation officer to participate in Alcoholics Anonymous but is, instead, required to attend an alternative program." In short, Warner's own papers indicate that

as soon as the judge was alerted to Warner's distaste for the religious aspects of A.A., the judge immediately altered that condition of probation. That being the case, the record support for the finding that the judge merely rubberstamped the recommendation of the probation officer is not apparent to me.

Furthermore, another finding, not made by my colleagues, is necessary to establish the recommendation of the probation officer as the legal cause of Warner's injuries. To reach my colleagues' conclusion, we would also have to find that an appeal from the sentence would have been fruitless because the New York appellate courts would simply not have given any consideration whatsoever to Warner's constitutional challenge out of blind and unhesitating deference to the recommendation of the Orange County probation officer. Quite the contrary, we now know that relief was available. *See Griffin.*

*Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), works against Warner. The procuring of a search warrant is not an adversary proceeding, much less one like sentencing, in which the subject has a constitutional right to counsel and a hearing on the merits. Because the magistrate issuing a warrant is not subject to adversary argument revealing flaws in the application and affidavit, the magistrate's intervening decision does not immunize the officer's unreasonable conduct. *Malley* simply has no application to a proceeding that is adversary and subject to immediate appellate review.

II

3. My colleagues rely upon N.Y. Penal Law § 65.10(2)(e) regarding the requirement that a court consult with the local probation authority regarding selection of an alcohol abuse program. Because this provision requires that the consultation be with the probation authority "or ... other public or private agency," it does not give any special status to probation authorities over other sources of information.

4. I believe this presumption to be rather unfair to state court judges. They lack any practical method of responding to the conclusion that they abdicated responsibility, at least short of asking to testify in the federal proceeding that "I was

indeed following the law, just as the record indicates."

5. One of Warner's original theories was that the sentence vested discretion in the probation officer to vitiate the requirement of A.A. attendance and that the probation officer's exercise of discretion in requiring continued attendance, rather than the original recommendation, was the basis of liability. The district court and my colleagues focus instead on the recommendation. Because I read the sentence to vest discretion to excuse further A.A. attendance only upon a completed rehabilitation and not for other reasons, such as a probationer's distaste for the religious aspects

I now turn[6] to the use of the Establishment Clause to invalidate a condition of probation that requires attendance at A.A. meetings. I will assume that the religious aspects of A.A. are sufficient to trigger a violation of either the Establishment or Free Exercise Clause if the other requisites of such claims are met. Nevertheless, I do not agree that the Establishment Clause provides a basis for relief to Warner.

In finding an Establishment Clause violation, my colleagues rely heavily upon the fact the probation authority did not recommend to the sentencing court that Warner have a choice between A.A. and a non-religious rehabilitation program. As a result, he was, in their view, coerced into participation in A.A. (In my view, of course, he freely chose A.A.) Although, as my colleagues point out, coerced participation in religious ceremonies may be a factor in finding an Establishment Clause violation, *see Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), it is not a necessary element of such a claim, and a choice among all available options is not a remedy for a valid Establishment Clause claim.

Relevant Establishment Clause precedent bars governmental endorsement and support of religion even in contexts in which no coercion exists. The "preservation and transmission of religious beliefs and worship is ... committed to private sphere," *Lee* at 589, 112 S.Ct. at 2656, and government may not support religious practices even when those engaged in them have freely chosen to do so. Government may not aid "a single religion or religion generally," *School Dist. of Grand Rapids v. Ball*, 473 U.S. 373, 382, 105 S.Ct. 3216, 3221, 87 L.Ed.2d 267 (1985), but must "maintain a course of neutrality among religions, and between religion and nonreligion." *Id.* A law that merely facilitates citizens in the practice of their religion may, therefore, be invalid even though no non-believer is negatively affected—even as a taxpayer. *See Board of Educ. of Kiryas Joel Village Sch.*

*Dist. v. Grumet*, 512 U.S. 687, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994).

If attendance at A.A. meetings as a condition of probation violates the Establishment Clause, it is because such a condition entails governmental sponsorship of religion over nonreligion. Following the logic of Establishment Clause jurisprudence, it would seem to me that such a condition is a violation whether or not the only person directly affected, the probationer, preferred a religiously oriented program over a secular one. The lack of governmental neutrality is precisely what caused the Supreme Court in *Grumet* to strike down a state law establishing a school district for the Village of Kiryas Joel, which was populated only by persons with a common religion. And, in *Lee*, surely the plaintiff's constitutional claim could not be satisfied by an offer of an additional ceremony at the high school graduation allowing speakers of her choice to express whatever spiritual or atheistic views—or disagreements with the spiritual or atheistic views of others—that were congenial to her.

Establishment Clause logic, if followed, therefore, would endanger any number of ubiquitous penal programs that are, in my view, clearly permissible. To take just two common examples, prisons may have chaplains, who systematically offer religious counseling, services, and other programs to prisoners. They may be selected, paid, and even monitored by state officials. Also, sentences to community service may involve service at soup kitchens, many of which are operated by churches where a meal begins with a prayer and religious tracts are distributed.

None of the programs described above violate the Establishment Clause in my view. Applying the three-part test established in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), each has a secular purpose in that they all further rehabilitation in one way or another. None have as a principal or primary effect the advancement or inhibition of religion.

of the program, I agree that the focus should be on the recommendation.

**6.** I do not reach the immunity issues. I do note, however, that the immunity of probation officers

is generally believed to be derived from judicial immunity. *See Dorman v. Higgins*, 821 F.2d 133, 136–37 (2d Cir.1987).

Any such effect is incidental. Finally, they do not lead to excessive entanglement of the government in religion. I very much doubt that substantial disagreement exists over this point. The state's control over the lives and activities of prisoners certainly justifies its making religious programs available to them. Indeed, under our caselaw, a state *must* offer some congregate programs of a sectarian nature. *See Salahuddin v. Coughlin,* 993 F.2d 306 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir.), *cert. denied,* 492 U.S. 909, 109 S.Ct. 3224, 106 L.Ed.2d 573 (1989). However, I also see no difference between the penal programs described above and Warner's sentence so far as the Establishment Clause—in contrast to the Free Exercise Clause—is concerned.

To be sure, my colleagues do not hold that attendance at A.A meetings can never be a condition of probation. Indeed, they expressly state that Warner should have been given a choice, a statement I take to mean that persons facing a sentence for alcohol-related offenses may constitutionally be offered a choice between A.A. meetings (or other religiously-based rehabilitation programs) and alternative secular programs as a condition of probation. My disagreement is simply over whether such a choice is required, or even permitted, by the Establishment Clause.

I hasten to add that I do not view compulsory activity with a substantial religious component as a valid penal measure, at least where equally effective secular rehabilitative programs are available.[7] *See O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (restriction on free exercise rights must be reasonably related to valid penalogical interest). Compulsory attendance at religious ceremonies as part of a penal sentence surely raises serious issues under the Free Exercise Clause and might well require the provision of a choice between secular and sectarian programs. Warner makes no Free Exercise claim, however.

III

This is a decision with important ramifications. It transports tort doctrine of proximate cause and foreseeability drawn from the law of negligence to the judicial process. In so doing, it fails to give any recognition to the more appropriate rules governing intentional torts, to the power of a party to a court proceeding to avoid harm by raising objections and taking appeals, or to the role of the judge as an independent decisionmaker. It thus may have implications for advocates as well as for those who advise judges. *See* Note 6, *supra.* It also brings to sentencing, probation, and penal institutions Establishment Clause doctrine that may not be easily cabined.

At a practical level, my colleagues' decision exposes every probation authority in this circuit to suits for damages and attorney's fees in virtually every case in which a recommendation of attendance at A.A. meetings has been made and accepted within the statute of limitations period, if no available alternative was offered and such recommendations were commonly made. Liability will follow no matter whether the defendant ever brought the constitutional issue to the attention of the sentencing court. Other claims of unconstitutional recommendations under Section 1983 will follow notwithstanding failure to make objections to sentencing courts.

I therefore respectfully dissent.

### ORDER OF REMAND

■ The district court found that Orange County had infringed Warner's rights under the First Amendment when the County's probation department, in accordance with its policy, recommended that Warner attend Alcoholics Anonymous as a condition of his probation. In so doing, the court made no findings as to whether Warner, by failing to object at the time of his sentence or to appeal, had consented, waived or forfeited objection to the religious nature of the A.A. program. Nor was the issue raised by the County in its appeal. The dissenting opinion in the appeal argued that Warner's voluntary

---

7. It is conceivable that in some areas the only rehabilitative program available, e.g., A.A., has some religious content.

presentence attendance at A.A. meetings gave him sufficient awareness of the extent of their religious content that his failure to object at the time of sentencing or to appeal should be construed as a consent or waiver. On petition for rehearing (with suggestion for rehearing in banc), judges of this court have expressed an interest in whether Warner, by failing to appeal his sentence, waived or forfeited the right to seek damages under § 1983, and in whether the County raised the issue at trial.

Although we have found no indication in the record on appeal that the County sought a determination of these questions at trial,[1] that record may be incomplete. (A record on appeal does not necessarily show all argument before the district court.) We accordingly remand to the district court for consideration of the following questions:

1. Whether the County asserted at trial the contention that Warner's failure to object at sentencing or appeal from his sentence constituted consent to the religious content of the Alcoholics Anonymous program, or effective waiver or forfeiture of his claim in this action.

2. Whether Warner was sufficiently aware at the time of his sentence of the extent of the religious practices of the A.A. meetings that his failure to object to, or appeal from, his sentence should be deemed a consent, or a waiver or forfeiture of his claim under § 1983. (Even if the County did not raise this contention at trial, the court should conduct a hearing on it so as to insure that both parties have an adequate opportunity to present evidence on the question, following which the court should make findings.)

The opinion of this court filed on September 9, 1996, as amended on May 14, 1997 is vacated.

The district court's findings may or may not lead it to amend its judgment. If the district court does not modify the judgment, then upon the filing of its findings, either party may restore the case to this court's

jurisdiction by a letter to the Clerk of the court, submitted within twenty days of the district court's filing of its findings. *See United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir.1994)(appellate court may seek supplementation of the record from the district court by issuing a mandate stating conditions that will restore appellate jurisdiction). If the district court does enter a modified judgment, a party seeking appellate review of the modified judgment should proceed by notice of appeal. In either event, the case shall be referred to this panel upon its return to this court's jurisdiction.

Judge WINTER has asked us to state that for reasons set forth in his dissent he sees no reason for a remand and does not concur in this order.

---

1. By its pleadings and by motion for summary judgment, the County did raise a different question—whether Warner's § 1983 claim is barred

by collateral estoppel because he had previously attacked the legality of his sentence in his state court motion to be relieved of attendance at A.A.