Filed 3/8/21  P. v. Alcantar CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JOVANNIE ALCANTAR,<br><br>      Defendant and Appellant. | D077482<br><br><br>(Super. Ct. No. JCF002708) |

APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Jr., Judge.  Affirmed.

Karissa Adame, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

In this case, Jovannie Alcantar asks this court to create a broad, new constitutional rule. He argues that a probation condition that requires him to attend weekly Alcoholics Anonymous (A.A.) or Narcotics Anonymous (N.A.) meetings is unconstitutional on its face. Specifically, he claims the subject probation condition violates the Establishment Clause of the United States Constitution, and we need not consider his personal religious beliefs in evaluating his contention. In other words, Alcantar asks us to declare that no California court can include a probation condition requiring a probationer to attend A.A. or N.A. even if the probationer does not make a specific objection to that condition based on his or her personal religious beliefs. On the record before us, we are not willing to create such an expansive new constitutional decree. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A felony complaint charged Alcantar with willful evasion of a peace officer (Veh. Code, § 2800.2, subd. (a); count 1); hit-and-run driving resulting in injury to another person (Veh. Code, § 20001, subd. (b)(1); count 2); and misdemeanor resisting, delaying, or obstructing a peace officer (Pen. Code, § 148, subd. (a)(1); count 3).[1] Alcantar pled no contest to count 2 in exchange for dismissal of the balance of the charges and the prosecution's recommendation that Alcantar be given probation and community service, with no incarceration beyond time served.

At the sentencing hearing, the trial court indicated it was in "general agreement with the negotiated disposition and the recommendation" of the probation officer. It then asked Alcantar's counsel if he had any objections to

---

[1] The underlying facts of Alcantar's offenses are not relevant for analysis of the issues before us. Suffice it to say, while evading a California Highway Patrol officer who was in pursuit of Alcantar, Alcantar drove recklessly, striking another motorist.

2

any specific probationary terms and conditions. In addition to addressing other conditions, defense counsel argued that Alcantar should not be made to attend any N.A. meetings because he was already attending a class for "drug-related issues" as a requirement of his probation conditions in Arizona. Counsel further requested that Alcantar be permitted to consume alcohol when he turned 21 years of age. He also pointed out that he did not believe there existed "a nexus for alcohol conditions, except for the fact [Alcantar's] under 21."

After considering defense counsel's argument and objections, the court imposed the following condition regarding treatment for alcohol and drug abuse for Alcantar: "He must participate in a recovery program of Narcotics Anonymous or Alcoholics Anonymous, attending a meeting—one meeting per week, providing proof to his probation officer that he's doing that."

After the court imposed the probation conditions, Alcantar's attorney again argued against the imposition of the A.A. or N.A. meeting requirement. At that point, defense counsel objected on religious grounds, asserting that compelling Alcantar to participate in A.A. or N.A. violated the First Amendment because these programs were religious in nature. This objection led to the following exchange:

> "[Alcantar's Counsel]: I object on a religious ground to any A.A. or N.A. meeting requirement. Essentially a person has the right to be free from establishment of religion. N.A. and A.A. meetings have been found in case law to include a requirement that you accept the existence of a higher power. They are religious in that nature. Accordingly, we object on that grounds, and I'd ask to strike an A.A. or N.A. meeting requirement in this case. It doesn't matter if it is consistent or inconsistent with Mr. Alcantar's religious beliefs because he has a right to be free from religion if he chooses to do so. And we are objecting to that condition. He's already subject to many drug terms

3

and conditions and programming requirements. I specifically object to that. I'd ask to incorporate the drug programming he's already doing.

"THE COURT: I understood your request the first time, and I understood it the second time. [¶] Are you specifically saying that N.A. or A.A. meetings conflict with your client's religious beliefs?

"[Alcantar's Counsel]: I'm not saying they conflict with my client's beliefs. I'm saying they are imposing upon my client—and I'm not making a statement either way about my client's religious beliefs—they are imposing religion on my client in violation of the First Amendment when he objects to having religion imposed upon him. He has a right to be free from religious imposition, which is exactly what an N.A. or A.A. requirement is, because the 12 steps require acknowledgment of the existence of a higher power. It's a religious program. I'm not saying its a bad program, but it is one we object to in this context, particularly in light of the fact that he's already doing programming.

"THE COURT: I understand your objection. I'll note it for the record. And I'm going to overrule your objection. If you want to establish it specifically conflicts with his personal religious belief system, I'll give you the right to have a hearing on that subjection. [¶] Are you requesting a hearing on that subject? And it would an in camera hearing.

"[Alcantar's Counsel]: We're declining the Court's request to expose my client's personal religious beliefs. And we are objecting to imposition of a program that requires acknowledgment and acceptance of specific religious beliefs like the existence of a higher power. I'll leave it at that.

"THE COURT: I would give you an in camera hearing. It would just be you, your client, and the Court, so it would be private and it would be under seal. [¶] But you are not requesting that at this time, [Alcantar's counsel]?

4

"[Alcantar's Counsel]: I'm not requesting that at this time. We're declining to divulge my client's religious beliefs to the Court, in camera or otherwise, and we are objecting to the imposition of specific beliefs under A.A. and N.A. meetings."

The court then overruled defense counsel's objection and imposed the A.A./N.A. probation condition as one of the many conditions of Alcantar's three years' formal probation. The court also suspended Alcantar's sentence.

After obtaining a certificate of good cause, Alcantar timely appealed.

DISCUSSION

The only issue before us is Alcantar's claim that the A.A./N.A. treatment probation condition is unconstitutional on its face. "A facial challenge 'does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts.' [Citation.] The claim is that a condition cannot have *any* valid application, without relying on any facts in the sentencing record. [Citation.]" (*People v. Patton* (2019) 41 Cal.App.5th 934, 946.) We review this question of law de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

Here, Alcantar's primary argument is that "[c]ompelling probationers to participate in A.A., N.A., or any other program rooted in religious faith is unconstitutionally coercive." Framed in this manner, Alcantar's contention seems unremarkable. Indeed, several federal cases have found a violation of the Establishment Cause[2] where a court required an individual to attend treatment with a particular A.A. or N.A. group over the individual's objection

_____

[2] The Establishment Clause guarantees that the "government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" (*Lee v. Weisman* (1992) 505 U.S. 577, 587, quoting *Lynch v. Donnelly* (1984) 465 U.S. 668, 678.)

that such treatment violated his personal religious beliefs. (See *Inouye v. Kemna* (9th Cir. 2007) 504 F.3d 705, 714 (*Inouye*); *Warner v. Orange County Dep't of Prob.* (2d Cir 1996) 115 F.3d 1068, 1074 (*Warner*); and *Kerr v. Farrey* (7th Cir. 1996) 95 F.3d 472, 474 (*Kerr*). Therefore, below, had the superior court compelled Alcantar to attend A.A. or N.A. meetings over his objection that such meetings conflicted with his own personal religious beliefs, *Inouye*, *Warner*, and *Kerr* would be instructive. However, that is not what occurred. The superior court gave Alcantar the opportunity to explain how attending A.A. or N.A. meetings would be contrary to his religious beliefs, even allowing Alcantar to do so in camera. Yet, Alcantar declined to provide any explanation.

Nevertheless, on appeal, Alcantar urges us to follow *Inouye*, *Warner*, and *Kerr* and declare that the A.A./N.A. probation condition here is unconstitutional on its face. As we explain *post*, none of those cases support a pronouncement of a new constitutional principle on the record before us.

In *Inouye*, *supra*, 504 F.3d 705, Ricky Inouye, a Buddhist who suffered from a methamphetamine addiction, had been challenging his compelled participation in religion-based drug treatment programs over several years. (*Id.* at p. 709.) Inouye sued his parole officer, among others, under section 1983 of title 42 of the United States Code, claiming he violated the Establishment Clause by requiring Inouye to attend A.A. or N.A. meetings as a condition of his parole. (*Inouye*, at pp. 710-711.) The district court granted the parole officer's motion for summary judgment, finding he had violated Inouye's First Amendment rights but had qualified immunity. (*Inouye*, at p. 711.)

6

On appeal, the Ninth Circuit observed it was "essentially uncontested that requiring a parolee to attend religion-based treatment programs violates the First Amendment." (*Inouye, supra*, 504 F.3d at p. 712.) Further, the court noted that the parole office did not dispute that the treatment program was substantially based in religion and presented no evidence that the program at issue differed from the usual A.A./N.A. program. (*Id.* at p. 713.) And Inouye claimed that his parole officer required him to attend a program rooted in religious faith and then recommended revoking his parole when Inouye refused to participate. (*Id.* at p. 713.) Against this backdrop, the Ninth Circuit agreed with the district court that the parole officer's actions were unconstitutional. In other words, on the facts before the court, a constitutional violation occurred.[3] (*Id.* at p. 714 ["The Hobson's choice [the parole officer] offered Inouye—to be imprisoned or to renounce his own religious beliefs—offend the core of Establishment Clause jurisprudence."].)

*Warner, supra*, 115 F.3d 1068 is similar to *Inouye*. There, Robert Warner, an atheist who pled guilty to driving drunk and driving without a license in violation of New York law, sued the Orange County Department of Probation based on his claim that one of his probation conditions required him to attend A.A. meetings, which forced him to participate in religious activity in violation of the Establishment Clause. (*Id.* at pp. 1069-1070.) The Second Circuit agreed with the district court's finding of a constitutional violation and specifically noted the amount of evidence in the record that

3     The Ninth Circuit also determined that the parole officer was not entitled to qualified immunity and, thus, reversed the judgment in favor of the parole officer. (*Inouye, supra*, 504 F.3d at p. 717.) Because the instant matter does not concern qualified immunity, we omit any discussion of this portion of *Inouye*.

7

attendance at the subject A.A. meeting "involved a substantial religious component." (*Id*. at p. 1070.) Further, based on the record before it, the circuit court observed certain "substantial religious component[s]" in the specific program Warner attended, including participants being "told to pray to God for help in overcoming their affliction" and meetings opening and closing with group prayer. (*Id*. at p. 1075.)

Finally, *Kerr*, *supra*, 95 F.3d 472 also involved an individual being compelled to attend N.A. meetings. James Kerr was an inmate in a Wisconsin prison who was required to attend N.A. meetings or he " 'would most likely be shipped off to a . . . higher security . . . prison[] and denied the hope of parole.' " (*Id*. at p. 474.) In reversing the district court's grant of the defendant's motion for summary judgment, the Seventh Circuit, like the Second Circuit in *Warner*, noted the evidence in the record that illustrated the "explicit religious content" of the particular N.A. group. (*Id*. at pp. 473-474.) Specifically, the court referred to the N.A. brochure, which set forth the twelve-step program that included at least five references to God. (*Id*. at p. 474.) And the parties agreed that the N.A. meetings were organized around the twelve-step principles. (*Ibid*.) In addition, the court discussed Kerr's affidavit in which he stated "he objected to dragging God's name into 'this messy business of addictions.' " (*Ibid*.) Kerr also declared that he regarded "N.A.'s deterministic view of God to be in conflict with his own belief of free will; more generally, he found it offensive to his personal religious beliefs." (*Ibid*.)

The federal cases relied on by Alcantar all have similar characteristics. They involve an individual who specifically set forth his religious views and claimed that attendance at a specific A.A. or N.A. group clashed with those views. And the record in those cases contained an agreement between the

8

parties regarding the religious nature of the subject program (see *Inouye*, *supra*, 504 F.3d at p. 712) or considerable evidence that showed the substantial religious component of the specific program (see *Warner*, *supra*, 115 F.3d at pp. 1070, 1075; *Kerr*, *supra*, 95 F.3d at pp. 473-474). And, despite the explicit protests of the individuals, they were compelled to attend a religious-based treatment program.

In contrast, here, Alcantar has not disclosed his religious beliefs. The superior court gave him the option to do so in camera, but Alcantar declined the invitation. Also, there is no evidence illustrating the extent to which the program Alcantar is required to attend by way of his parole condition is religious. Instead, at the sentencing hearing, Alcantar's counsel represented that "N.A. and A.A. meetings have been found in case law to include a requirement that you accept a higher power. They are religious in that nature."[4] He offered no evidence to support his assertion.[5] Moreover, the People have not conceded that the N.A. or A.A. group at issue here involves a "substantial religious component." (See *Warner*, *supra*, 115 F.3d at p. 1070; *Kerr*, *supra*, 95 F.3d at pp. 473-474 ["explicit religious content"].) Rather, the People have emphasized the "the challenged condition serves the secular purpose of curbing drug and alcohol abuse to reduce recidivism, has a principal effect of treating addiction that neither endorses nor inhibits religion, and does not foster excessive government entanglement with any religious ideology or institutions." For these reasons, we do not conclude that *Inouye*, *Warner*, and *Kerr* support Alcantar's claim that the A.A./N.A. condition here is facially unconstitutional.

---

[4]     Alcantar's counsel did not refer to any case by name or provide a citation during the sentencing hearing.

[5]     Alcantar's counsel could have provided such evidence at the offered in camera hearing.

9

Perhaps realizing the lack of evidence in the record illustrating the religious nature of the specific A.A. or N.A. group Alcantar would attend, he represents that our high court has "implicitly recogniz[ed] that A.A. has a religious element." (See *Walker v. State Bar* (1989) 49 Cal.3d 1107, 1119, fn. 4 (*Walker*).) We read no such recognition in that case. In *Walker*, the petitioner challenged the Review Department of the State Bar's recommendation that he be disbarred from the practice of law in California. (*Id*. at p. 1110.) A drug addiction caused the petitioner's past misconduct, and he claimed that he had "not drunk alcohol since 1981 or taken drugs since 1986 and that God ha[d] recently delivered him from his addictions." (*Id*. at p. 1119.) However, the court noted that the psychiatrist that last evaluated the petitioner did not have as optimistic a view of the petitioner's recovery and specifically suggested the petitioner receive " 'periodic, possibly quarterly reports . . . made by his treating physician . . .' " (*Ibid*.) Despite the psychiatrist's recommendation, the petitioner refused to recognize the importance of continued participation in A.A. or a drug rehabilitation program. (*Ibid*.) Further, the petitioner asserted that his participation in a rehabilitation program would offend his religious beliefs, but he never specified what religious beliefs he held or how counseling would offend his beliefs. And the petitioner conceded during oral argument that "he had no religious objection to attending A.A. meetings." (*Id*. at p. 1019, fn. 4.) Based on this background, the court was "hesitant to dismiss his refusal to undergo counseling as an example of his free exercise of religious beliefs." (*Ibid*.) Thus, contrary to Alcantar's representation, the California Supreme Court did not recognize a religious element of A.A. in *Walker*, but, instead, concluded it should not consider a First Amendment challenge to the petitioner's refusal to participate in a rehabilitation program. As such,

*Walker* does not support Alcantar's argument that the specific A.A. or N.A. program he would attend pursuant to his probation condition is religious in nature.

Simply put, on the record before us, we do not find it necessary to determine that a probation condition that requires a probationer to attend A.A. or N.A. meetings is unconstitutional on its face. Below, the superior court expressed concern about Alcantar's personal religious beliefs and appeared willing to accommodate them. However, Alcantar refused to explain his religious beliefs or even claim that participation in the specific A.A. or N.A. program would violate his beliefs. Further, Alcantar offered no evidence to show the particular A.A. or N.A. meetings he would have to attend involve a substantial religious component. It may be that Alcantar will ultimately be proved correct that the Establishment Clause is violated when a probationer is referred to A.A. or N.A regardless of the probationer's religious belief. However, we do not believe this is the case on which to make such a sweeping constitutional proclamation.

DISPOSITON

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

BENKE, J.

12