**Edward F. O'CONNOR, Plaintiff,**

v.

**The STATE OF CALIFORNIA and Orange County, California, Defendants.**

**No. SACV 92–817–GLT.**

United States District Court, C.D. California.

June 8, 1994.

---

304

Edward F. O'Connor, pro se.

Norman J. Watkins, William F. Bernard, Members of the Law Firm of Lynberg & Watkins, Terry C. Andrus, County Counsel, Jim Persinger, Deputy, Santa Ana, CA, Daniel E. Lungren, Atty. Gen., John H. Sanders, Supervising Deputy, Wendi A. Horwitz, Deputy, Martin H. Milas, Supervising Deputy, Angela Sierra, Deputy, Los Angeles, CA, for defendants.

## ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS

TAYLOR, District Judge.

The court concludes that requiring a person convicted of drunk driving to attend a self-help program, where the principal program available is Alcoholics Anonymous, does not violate the Establishment Clause of the First Amendment to the United States Constitution.

## I. *BACKGROUND*

This case presents a Constitutional question of first impression in this circuit.[1] Plaintiff O'Connor, acting in pro per, was convicted in June 1992 of driving under the influence in Orange County Municipal Court and was found to be a "multiple" offender. As part of his probationary terms, the Municipal Court ordered that he enroll in Orange County's alcohol and drug education program administered by the National Council on Alcoholism and Drug Dependence, an 18 month program licensed by the State. The Council's program advised O'Connor that, in addition to its meetings, O'Connor must attend weekly "self-help" meetings, in order to fulfill Orange County's "additional program" requirements.

In October 1992, plaintiff filed a Motion for Modification of Conditions of Revocable Release with the Municipal Court requesting that his probation delete Alcoholics Anonymous meetings. The Municipal Court denied the motion on the ground that there was an alternative program that O'Connor could attend.

In February 1993, O'Connor filed suit in this court against the State of California,

---

1. Only a few courts around the country have addressed this issue. In *Stafford v. Harrison*, 766 F.Supp. 1014 (D.Kan.1991), a Kansas district court held that requiring a prison inmate to participate in an AA-type alcohol rehabilitation program did not impinge on the inmate's own religion nor did it establish and impose religion on the inmate. In addition, in *Youle v. Edgar*, 172 Ill.App.3d 498, 122 Ill.Dec. 501, 526 N.E.2d 894 (1988), an Illinois state court held that it was not a violation of a drunk driver's constitutional rights to require him to participate in an AA program, since the primary function of the group is to treat alcoholism, and since participation in only that group was not mandated. But, in *Warner v. Orange County Department of Probation*, 827 F.Supp. 261 (S.D.N.Y.1993), a New York district court denied defendant's motion to dismiss, holding that a motorist convicted for an alcohol-related driving offense and ordered to attend AA meetings as a condition of probation adequately stated a claim for violation of the Establishment Clause.

Orange County, the Director of the Department of Motor Vehicles, the Chief Deputy Director of the State of California, and the Supervisors of Orange County, alleging that the endorsement and promotion of AA by the State through its approval of County alcohol programs violated the Establishment Clause of the First Amendment. The parties now bring cross-motions for summary judgment. Plaintiff argues that, while there are hundreds of approved AA programs per week, only two non-sectarian meetings, known as Rational Recovery, were offered.[2] Defendants counter that AA does not violate the Establishment Clause because it is not a religious organization, does not advance or inhibit religion as its principal or primary purpose, and the State's involvement with AA does not cause excessive entanglement between church and state.

This Court now finds in favor of defendants, for the reasons set out below.

## II. DISCUSSION

### 1. Requirements for Drunk Drivers

The undisputed facts show Drinking Driver Programs have been in existence statewide since 1977 and licensed since 1979 pursuant to California Health and Safety Code § 11836 et seq. The Department of Alcohol and Drug Programs has a Driving Under the Influence Program Branch which licenses first offender, and eighteen and thirty month multiple offender drinking driver programs, including the eighteen month program which plaintiff attended. The programs provide education and counseling services that focus on the consequences of drinking and driving. The state monitors the programs to make sure they operate in a manner that does not compromise the health and safety of participants and to provide technical assistance in the delivery of services. The state monitors compliance with licensing statutes and regulations by conducting on-site visits every two years.

Title 9 of California Code of Regulations § 9860 permits individual counties to man-

date "additional program" requirements as long as the counties "ensure that a variety of options are available which take into account the unique needs of each participant." California Health and Safety Code § 11837.4 requires that any such "additional program" requirements be specifically approved by the state, and the state monitors these additional programs. The purpose of allowing counties to mandate "additional program" requirements is to provide for community control of a variety of community type services that focus on the results of alcohol use or abuse.

Drinking Driver Programs are funded by participant fees and are to be self-supporting (California Health and Safety Code § 11837.4(b)). The state does not receive fees from program participants, and only receives fees from the programs for the cost of licensing activities. Participant fees are to cover the cost of program services.

Orange County mandates, as its "additional program," participation in a "self-help" program. The County keeps no records of any program that an individual attends to fulfill its requirement. The County also does not distribute any materials discussing what types of groups are available. According to the County, it is up to the individual to find a complying program. However, while Alcoholics Anonymous and Rational Recovery are pre-approved, any other program must be specially approved by the County.

When a convicted drunk driver goes to the state-approved program, he is told about both the state and the county requirements. According to the County, only Rational Recovery and Alcoholics Anonymous provide literature for distribution. According to plaintiff O'Connor, when he went to the additional program, he was told only about AA, and it was only when he complained that he was told about Rational Recovery, a non-twelve-step alternative. It is undisputed that Rational Recovery meetings were offered in Orange County only about five times a week, while Alcoholics Anonymous meetings were offered much more frequently. Plaintiff says he attends AA half the time and Rational

**2.** Plaintiff has raised additional arguments that the County's requirement violated state law, and requesting an accounting. At oral argument it

was agreed that such remaining issues would be further discussed by the parties after the court has ruled on the Constitutional issue.

Recovery the other half, depending on which meeting is compatible with his schedule.

### 2. Alcoholics Anonymous

According to AA promotional literature, Alcoholics Anonymous is

> a fellowship of men and women who share their experience, strength, and hope with each other that they may solve their common problem and help others to recover from alcoholism. The only requirement for membership is a desire to stop drinking.... A.A. is not allied with any sect, denomination, politics, organization or institution.... Our primary purpose is to stay sober and help other alcoholics to achieve sobriety.

The heart of the AA's suggested program of personal recovery is contained in "Twelve Steps" describing the experience of the earliest members of the Society.[3] Newcomers are not asked to accept or follow these Twelve Steps in their entirety if they feel unwilling or unable to do so. In addition, according to AA, the "higher power" which the participant is encouraged to acknowledge need not be God.

The format of an AA meeting is determined by the leader and members of the individual group. AA meetings that plaintiff attended were opened with a prayer and were closed with participants holding hands and reciting the Lord's Prayer. In addition, at one meeting plaintiff received a handout entitled "Twelve Steps and Their Biblical Comparisons," which compared each of the twelve steps to a passage from the New Testament. However, the evidence does not show that this handout was authored by, or distributed as, an official publication of the twelve-step program plaintiff was attending.

### 3. The Establishment Clause

The prevailing three-part test for compliance with the First Amendment's Establishment Clause was stated by the Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). In that case, the Court held unconstitutional two state statutes providing salary supplements to teachers of secular subjects in nonpublic (including parochial) schools, and also reimbursing nonpublic schools for secular materials and textbooks. The Court stated that to comply with the Establishment Clause a statute 1) must have a secular legislative purpose, 2) its principal or primary effect must be one that neither advances nor inhibits religion, and 3) it must not foster an excessive government entanglement with religion.

Later Supreme Court Establishment Clause cases applying the *Lemon* Test are by no means consistent. For example, in *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), the Court held that the display of a creche in a county courthouse violated the Establishment Clause, while the display of a menorah next to a Christmas tree did not. The Court stated an "endorsement" test as a "refinement" of its *Lemon* Test:

> Our subsequent decisions further have refined the definition of governmental action that unconstitutionally advances religion. In recent years, we have paid particularly close attention to whether the challenged

---

3. These twelve steps are:
1. We admitted we were powerless over alcohol—that our lives had become unmanageable.
2. Came to believe that a Power greater than ourselves could restore us to sanity.
3. Made a decision to turn our will and our lives over to the care of God *as we understood Him.* (emphasis in original).
4. Made a searching and fearless moral inventory of ourselves.
5. Admitted to God, to ourselves and to another human being the exact nature of our wrongs.
6. Were entirely ready to have God remove all these defects of character.
7. Humbly asked Him to remove our shortcomings.

8. Made a list of all persons we had harmed, and became willing to make amends to them all.
9. Made direct amends to such people wherever possible, except when to do so would injure them or others.
10. Continued to take personal inventory and when we were wrong promptly admitted it.
11. Sought through prayer and meditation to improve our conscious contact with God *as we understood Him,* praying only for knowledge of His will for us and the power to carry it out.
12. Having had a spiritual awakening as the result of these steps, we tried to carry this message to alcoholics and to practice these principles in all our affairs.

governmental practice either has the purpose or effect of "endorsing" religion, a concern that has long had a place in our Establishment Clause jurisprudence.... Whether the key word is "endorsement," "favoritism," or "promotion," the essential principle remains the same. The Establishment Clause, at the very least, prohibits government from appearing to take a position on questions of religious belief or from "making adherence to a religion relevant in any way to a person's standing in the political community." (citation omitted).

*Id.* at 592–594, 109 S.Ct. at 3100–01.

However, in a different context, the Court was more tolerant of the involvement of organized religion with social problems. In *Bowen v. Kendrick*, 487 U.S. 589, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988), the Court upheld the Adolescent Family Life Act as not violating the Establishment Clause. That Act authorizes federal grants to public and non-profit private organizations or agencies for services and research in the area of premarital adolescent sexual relations and pregnancy. The Act was challenged because religious organizations were involved in carrying out the purposes of the Act. The Court held that the Act, on its face, did not violate the Lemon test in that 1) it was motivated primarily by the legitimate purpose of eliminating or reducing social and economic problems caused by teenage sexuality, pregnancy, and parenthood; 2) it did not have the primary purpose of advancing religion but merely rec-

ognized that religious organizations can help solve social problems; and 3) it did not create an excessive entanglement of church and state because the monitoring was only necessary to ensure that public money was spent in the way Congress intended.[4]

The Supreme Court's evolving Establishment Clause discussion makes clear that any analysis of its violation is highly contextual, involving consideration of factors such as the purpose of the statute or state activity in question, the degree of government involvement in the administration of the program, and whether and how children, as opposed to adults, are being affected.[5]

■ Applying the *Lemon* Test to the situation presented here, defendants have not violated the Establishment Clause. It is undisputed that the primary purpose of requiring attendance at self-help meetings such as AA is to prevent drunk driving and the tragic injuries and deaths that result from it, while at the same time providing treatment for individuals with substance abuse problems. The "principal and primary effect" of encouraging participation in AA is not to advance religious belief but to treat substance abuse.

■ Spirituality is a central part of the Alcoholics Anonymous philosophy, and the program contains religious overtones. While AA is not a "religion"—various faiths may all participate without renouncing their religious convictions—a review of the "Big Book of Alcoholics Anonymous" reveals that it is founded on monotheistic principles.[6] While

---

**4.** However, the Court remanded the case to the district court for further consideration of whether the statute as applied violated the Establishment Clause, directing it to consider whether "in particular cases AFLA aid has been used to fund 'specifically religious activit[ies]' in an otherwise secular setting." *Id.* at 623, 108 S.Ct. at 2582. The Court stated that "it would be relevant to determine, for example, whether the Secretary has permitted AFLA grantees to use materials that have an explicitly religious content or are designed to inculcate the views of a particular religious faith." *Id.*

**5.** For example, in *Lee v. Weisman,* —— U.S. ——, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), the Court held that a public school could not provide for a "nonsectarian" prayer to be given at graduation by a clergyman it selected, and stated its concern that "The degree of school involvement

here made it clear that the graduation prayers bore the imprint of the State and thus put school-age children who objected in an untenable position." *Id.* at ——, 112 S.Ct. at 2657.

**6.** For example, Chapter 3 of The Big Book of Alcoholics Anonymous, pages 62–63 states:

This is the how and why of it. First of all, we had to quit playing God. It didn't work. Next, we decided that hereafter in this drama of life, God was going to be our Director. He is the Principal; we are His agents. He is the Father, and we are His children. Most good ideas are simple, and this concept was the keystone of the new and triumphant arch through which we passed to freedom.

When we sincerely took such a position, all sorts of remarkable things followed. We had a new Employer. Being all powerful, He pro-

it is true that reference to "God" and "Higher Power" need not mean a deity, the association between the two is frequently made. Establishment Clause doctrine requires not simply the absence of favoritism among religions but of religion over non-religion as well; even atheism falls within the protection of the First Amendment. *Warner v. Orange County Department of Probation,* 827 F.Supp. 261, 265 (S.D.N.Y.1993).

However, the fact that the concept of God is incorporated in a program in which the State encourages participation does not in itself violate the Establishment Clause. More state involvement—whether it is called "entanglement" or "endorsement"—is required than has been shown here.

Significant to this Court's decision is that the individual has a *choice* over what program to attend. Rational Recovery is a viable, although less frequently offered, self-help program that does not use any concept of "spirituality" to treat alcohol-related problems. Moreover, individuals who do not want to attend either Alcoholics Anonymous or Rational Recovery may devise their own means of "self-help" and seek approval from the County. Given this array of options, it cannot be said that the State and County are endorsing the religious message of AA rather than promoting the concept of "self-help."

The lack of "entanglement" between the State and County and AA is also significant. AA does not receive any money, materials, or administrative input from religious groups or institutions, nor does it receive any money from the State or County in exchange for accepting those convicted of drunk driving. The only "involvement" between the State and AA is that individuals are told that they must fulfill the self-help requirement and that AA is a recommended means of doing so. In this Court's opinion, such arms-length involvement does not amount to "entanglement" that offends the Establishment Clause.

Because the use of Alcoholics Anonymous as a means to fulfill the County's self-help requirements complies with all three parts of the *Lemon* Test, the Court finds that defendants have not violated the Establishment Clause.

## III. *DISPOSITION*

For the reasons stated, summary judgment is GRANTED in favor of defendants on the Constitutional issue.

vided what we needed, if we kept close to Him and performed His work well. Established on such as footing we became less and less interested in ourselves, our little plans and designs.... [A]s we became conscious of His presence, we began to lose our fear of today, tomorrow or the hereafter. We were reborn.