24 P.3d 1091 (2001)
106 Wash.App. 625
In re the Personal Restraint Petition of Ricardo GARCIA, Petitioner.
No. 44769-6-I.
Court of Appeals of Washington, Division 1.
June 11, 2001.
*1093 Thomas Kummerow, Seattle, for Appellant.
Ricardo Garcia, pro se.
Michael Ballnik, Asst. Atty. Gen., Olympia, for Respondent.
*1092 COX, J.
Ricardo Garcia seeks relief in this personal restraint petition (PRP) from the loss of good conduct time credits following two disciplinary hearings in which he was sanctioned for failure to participate in chemical dependency treatment classes. He also asks this court to bar his future attendance at such classes. Garcia primarily argues that the chemical dependency treatment program requires that he participate in Alcoholics Anonymous (AA) classes, which he contends include religious-based content that violates the Establishment Clause of the First Amendment. Because there are other classes available to Garcia that do not have religious-based content and that will fulfill the requirements of the treatment program, we deny the petition.
In 1994, Ricardo Garcia was sentenced to seven years and six months for a conviction of first degree rape. He is incarcerated at Airway Heights Corrections Center (AHCC). In November 1997, a Department of Corrections (DOC) chemical dependency counselor screened Garcia and found him chemically dependent. The counselor then recommended a course of treatment that required Garcia, among other things, to attend AA classes. That same month, Garcia consented, in writing, to enter DOC's treatment program, including attending "AA, NA, or CA meetings each week during the course of treatment as recommended by [Garcia's] case manager." Thereafter, the treatment program became a mandatory programming assignment for Garcia.
On March 12, 1998, Garcia refused to participate in the chemical dependency program orientation class. DOC sanctioned him with the loss of 20 days good conduct time credit.[1] The sanction was imposed under the authority of the Washington Administrative Code.[2] On April 8, Garcia was sanctioned with loss of an additional 40 days good conduct time credit for failure to participate in Moral Recognition Therapy (MRT), a part of the chemical dependency treatment program. Thereafter, it appears that Garcia no longer participated in the treatment program.
In 1999, Garcia sought readmittance to the chemical dependency treatment program. DOC returned Garcia to treatment, conditioned on his attendance at MRT classes and "AA/NA or another self-help group." Garcia refused to participate in AA classes, allegedly because of the religious-based content of such classes. It also appears that he refused to participate in other chemical dependency treatment classes.
Garcia seeks relief by this PRP, challenging his mandatory programming assignments for the chemical dependency treatment program. He also seeks restoration of the 60 days of good conduct time credit that he lost for refusing to comply with such assignments.

Establishment Clause
Garcia argues that DOC coerced his attendance at AA classes in violation of his rights under the Establishment Clause of the First Amendment to the U.S. Constitution. We hold that DOC did not coerce Garcia into attending such classes.
A preliminary issue is the proper standard of review that applies to this case. *1094 Generally, to prevail on a personal restraint petition, a petitioner must establish either (1) actual and substantial prejudice arising from constitutional error, or (2) nonconstitutional error that inherently results in a complete miscarriage of justice.[3] Here, Garcia's PRP implicates a constitutional error because he alleges that DOC violated his First Amendment rights. But where, as here, the petitioner has had no previous or alternative avenue for obtaining state judicial review, he need only satisfy the requirements of RAP 16.4.[4] Thus, to prevail in his PRP, Garcia need only show that he is restrained under RAP 16.4(b)[5] and that the restraint is unlawful under RAP 16.4(c).[6]
Here, Garcia is confined so the "restraint" requirement is satisfied. The focus here then is on whether the condition of his restraint is unlawful.
More specifically, the question before us is whether DOC may, consistent with the Establishment Clause of the First Amendment to the United States Constitution, require an inmate to attend AA classes as part of chemical dependency treatment. We hold that mandating attendance at such classes does violate the Establishment Clause. But where, as here, alternative classes without religious-based content are provided, there is no constitutional violation.
The Establishment Clause guarantees that the "government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which `establishes a [state] religion or religious faith, or tends to do so.'"[7] Several federal and state courts have held that requiring attendance at AA or AA-based programs violates the Establishment Clause of the First Amendment due to such programs' religious content.[8]
In Kerr v. Farrey,[9] the Seventh Circuit Court of Appeals addressed whether a state correctional institution could require an inmate to attend a substance abuse program that allegedly included religious content. There, the specific requirement was for inmates *1095 with chemical dependency problems to observe Narcotics Anonymous ("NA") meetings as part of rehabilitation.[10] NA was the only substance abuse program available to the inmates.[11] The penalty for not attending such programs was for the inmate to be rated a higher security risk and to suffer adverse effects for parole eligibility.[12]
The Kerr court first surveyed the Supreme Court's cases dealing with the Establishment Clause, dividing those cases into two broad categories. It characterized the first group of cases as the "outsider" cases, where the state seeks to impose religion on an unwilling subject.[13] The second group of cases includes situations where existing religious groups seek some benefit from the state, or in which the state wishes to confer a benefit on such groups.[14] The court then concluded that the case before it belonged in the former group of cases. From that principle, it derived a test from certain language in the U.S. Supreme Court's majority's opinion in Lee.[15]
The three-part test formulated by the Kerr court rests on answers to the following questions:
[F]irst, has the state acted; second, does the action amount to coercion; and third, is the object of the coercion religious or secular?[[16]]
The Kerr court concluded that the first prong of the test was satisfied since the prison authorities act for the State.[17] The court also found that the second prong was met because Kerr was subject to penalties, such as classification to a higher security risk, if he refused to attend NA meetings.[18] Finally, the court determined that the object of the coercion was religious because NA's twelve steps are based on the monotheistic idea of a single God.[19]
The test set forth in Kerr is applicable to the matter now before us. Here, both DOC and Garcia agree that the first prong of the test is met. DOC acts for the State in administering the chemical dependency treatment program. But the parties reach dramatically different conclusions when they apply the second and third parts of the test to this situation.
*1096 The greatest difference between the positions of the parties is over the third prong of the test. Garcia contends that the object of the coercion is religious. DOC takes the position that Garcia cannot know whether the AA classes have religious content since he has never attended any. The State's position is not well-taken.
Here, Garcia attached to his petition a copy of AA's twelve steps from the AA Step Workbook used by participants in the AA classes offered by DOC. AA's twelve steps are almost identical to those of NA's outlined in Kerr.[20] And DOC does not dispute that the content of the AA classes at AHCC were organized around the twelve steps principle. As such, contrary to the State's claim, Garcia is in a position to demonstrate the alleged religious content of AA classes.
A plain reading of the AA twelve steps shows that they are premised on the idea of a monotheistic God.[21] Like Kerr, the record before us does not present a situation where the only religious note was struck by incidental references to God such as the words "under God" in the Pledge of Allegiance.[22] Rather, the record shows that the AA classes at AHCC are permeated with religion because the classes revolve around the twelve step manifesto. The record also shows that participants recite the Lord's Prayer and receive coins inscribed with the Serenity Prayer.[23] As such, we conclude that the object of the classes is religious.
Finally, Garcia claims that DOC coerced him to attend AA meetings by sanctioning him for his refusal to attend them. The State counters that Garcia was never sanctioned for his refusal to attend AA meetings because he was never required to attend them. Rather, the State claims that Garcia had a choice over the type of self-help class to attend in order to satisfy his chemical dependency treatment program requirement. The record supports the State.
First, as counsel correctly conceded at oral argument, the record shows that Garcia was never sanctioned for failing to attend AA classes. Rather, he was sanctioned for failure to attend chemical dependency treatment orientation and a MRT class, a component of his chemical dependency treatment program. As counsel candidly conceded in the brief, there is nothing in the record before us to substantiate whether MRT classes have any religious content. Likewise, we observe that that there is no indication in this record that the chemical dependency treatment orientation has a religious content.
Second, there was no Establishment Clause violation here because Garcia had a choice over the type of self-help class to attend in order to satisfy his chemical dependency treatment program requirement. The absence or presence of choice for inmates in the type of programs in which they may participate is sometimes determinative in deciding whether there has been State coercion to participate in religious alcohol/narcotic treatment programs.[24] DOC has shown in *1097 the record before us, that there were other self-help programs besides AA available to Garcia. He has failed to show that these alternative classes were not available to him at the time of infraction or not available to him now.
Specifically, non-religious classes offered at AHCC include anger stress management and victim awareness.[25] While an inmate will be enrolled in AA or NA class upon entering a chemical dependency treatment program, he or she may arrange to take a non-religious self-help class in lieu of AA or NA.[26] Thus, given the non-religious classes available to Garcia, we conclude that DOC did not coerce him into participating in a religious program.[27] Accordingly, there was no Establishment Clause violation.
We also note that Garcia has failed in his burden to show that he was unlawfully infracted for failing to attend the orientation class and the MRT class in 1998. He has failed to demonstrate any Establishment Clause violation with respect to those particular classes. Thus, he is not entitled to restoration of the loss of good conduct credits.

Administrative Rules
Garcia also argues that DOC violated his right to refuse participation in any religious practice under WAC 440-22-310(1)(i) when it sanctioned him for failure to attend chemical dependency treatment orientation and MRT class. This argument is unpersuasive.
WAC 440-22-310(1) states that
Each [chemical dependency treatment] service provider shall ensure each patient:

...
(i) is provided reasonable opportunity to practice the religion of choice as long as the practice does not infringe on the rights and treatment of others or the treatment service. The patient has the right to refuse participation in any religious practice [.]
The administrative rules codified at WAC 440-22 pertain to Department of Social and Health Services' certification of chemical dependency treatment services. Assuming, without deciding, that WAC 440-22 applies to DOC chemical dependency treatment services, DOC did not violate Garcia's patients' rights under WAC 440-22. As we have explained in the prior portion of this opinion, Garcia has not shown that MRT or the orientation classes are religious programs. And he was never required to participate in a religion-based self-help group such as AA as part of his chemical dependency treatment program.
Garcia next argues that WAC 289-22-200(6)(e), which prohibits correctional facilities from requiring prisoners to receive counseling services unless ordered by the appropriate court or disciplinary review body, bars DOC from sanctioning him for failure to participate in chemical dependency treatment orientation and MRT class. We hold that WAC 289-22-200(6)(e) is inapplicable.
WAC 289-22-200 states that "[p]risoners shall not be required to receive counseling services unless ordered by the appropriate court or the disciplinary review body." WAC 289-22-200 was promulgated under RCW 70.48.[28] RCW 70.48, titled the "City and County Jails Act," governs operation of city and county jails. RCW 70.48.020(5) defines jail as facilities operated by cities or counties primarily designed, staffed, and used for the temporary housing of adult persons charged with a criminal offense prior to trial or sentencing *1098 and for the housing of such persons not exceeding one year.[29]
In contrast, AHCC is a state correctional facility used for the confinement of convicted felons, like Garcia, whose sentences exceed one year.[30] As such, WAC 289-22-200 does not bar DOC from requiring inmates to participate in counseling services such as the chemical dependency treatment program. Moreover, RCW 72.09.130 explicitly requires DOC-operated state correctional facilities to adopt a system linking an inmate's behavior and participation in available education and work programs with the receipt or denial of earned early release days and other privileges.[31]

Summary
In sum, Garcia fails to show that the State coerced him into attending AA classes as part of his chemical dependency treatment program. He also fails to show any constitutional violation in requiring him to attend orientation classes or MRT classes. Finally, he has failed in his burden to show that the loss of 60 days of good conduct time credit for failing to attend orientation and MRT classes was improper.
We deny the personal restraint petition.
KENNEDY and BAKER, JJ., concur.
NOTES
[1] Response of DOC, Exhibit 1.
[2] WAC 137-28-260 states in relevant part:

Serious infractions ... Failure to follow orders and rules
557 Refusing to participate in an available education or work program or other mandatory programming assignment. (Italics ours.)
DOP policy 320.150, which provides the range of sanctions available to the prison hearings officer, states that:
Offenders found guilty of a 557...infraction for failing or refusing to maintain a work or education program assignment as mandated by HB 2010, will lose all available earned release credits for the month, and specified privileges as determined by the disciplinary hearing officer. Additional minimum sanctions for Good Conduct Time are 30 days for a second 557, and 90 days for the third (and subsequent) 557...in a 12-month period.
[3] In re Hews, 99 Wash.2d 80, 88, 660 P.2d 263 (1983); In re Cook, 114 Wash.2d 802, 812, 792 P.2d 506 (1990); In re Personal Restraint Petition of Rice, 118 Wash.2d 876, 886, 828 P.2d 1086, cert. denied, Rice v. Washington, 506 U.S. 958, 113 S.Ct. 421, 121 L.Ed.2d 344 (1992).
[4] In re Cashaw, 123 Wash.2d 138, 148-49, 866 P.2d 8 (1994) (holding that a PRP challenging a decision of the Indeterminate Sentence Review Board concerning parole need not meet the threshold requirements for constitutional and nonconstitutional errors because the policy of finality underlying those requirements is absent where the inmate has had no previous or alternative avenue for obtaining state judicial review of the board decision); see also In re Shepard, 127 Wash.2d 185, 191, 898 P.2d 828 (1995).
[5] RAP 16.4(b) states that

[a] petitioner is under a "restraint" if the petitioner has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is confined, the petitioner is subject to imminent confinement, or the petitioner is under some other disability resulting from a judgment or sentence in a criminal case.
(Italics ours.)
[6] RAP 16.4(c) states that "[t]he restraint must be unlawful for one or more of the following reasons:

...
(6) The conditions or manner of the restraint of petitioner are in violation of the Constitution of the United States or the Constitution or laws of the State of Washington[.]"
[7] Lee v. Weisman, 505 U.S. 577, 587, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992).
[8] See, e.g., Warner v. Orange County Dept. of Probation, 115 F.3d 1068, 1076-77 (2nd Cir. 1996) (forced attendance at AA meetings as condition of probation violated Establishment Clause); Kerr v. Farrey, 95 F.3d 472, 479-80 (7th Cir.1996) (conditioning prisoners' risk status and parole eligibility on participation in NA violated Establishment Clause); Arnold v. Tennessee Bd. of Paroles, 956 S.W.2d 478, 484 (Tenn.1997) (where treatment program is religious and is the only treatment program available, forced participation and consideration of attendance or non-attendance in parole decisions violates Establishment Clause); Griffin v. Coughlin, 88 N.Y.2d 674, 691-92, 649 N.Y.S.2d 903, 673 N.E.2d 98 (1996) (mandated rehabilitation programs at prison that incorporate AA principles violate Establishment Clause), cert. denied, 519 U.S. 1054, 117 S.Ct. 681, 136 L.Ed.2d 607 (1997). But see, O'Connor v. California, 855 F.Supp. 303, 308 (C.D.Cal.1994) (finding no Establishment Clause violation where a person convicted of drunk driving had a choice over what programs to attend in order to satisfy probation terms, including self-help programs that do not use any concept of "spirituality" to treat alcohol-related problems).
[9] 95 F.3d 472 (7th Cir.1996).
[10] Kerr, 95 F.3d at 474. The NA twelve-step program at issue in Kerr described the road to recovery that successful NA participants had followed:

1. We admitted that we were powerless over our addiction, that our lives had become unmanageable.
2. We came to believe that a power greater than ourselves could restore us to sanity.
3. We made a decision to turn our will and our lives over to the care of God as we understood Him.
4. We made a searching and fearless moral inventory of ourselves.
5. We admitted to God, to ourselves, and to another human being the exact nature of our wrongs.
6. We were entirely ready to have God remove all these defects of character.
7. We humbly asked Him to remove our shortcomings.
8. We made a list of all persons we had harmed, and became willing to make amends to them all.
9. We made direct amends to such people wherever possible, except when to do so would injure them or others.
10. We continued to take personal inventory, and when we were wrong promptly admitted it.
11. We sought through prayer and meditation to improve our conscious contact with God, as we understood Him, praying only for knowledge of His will for us, and the power to carry that out.
12. Having had a spiritual awakening as a result of those steps, we tried to carry this message to addicts and to practice these principles in all our affairs.
[11] Kerr, 95 F.3d at 474.
[12] Kerr, 95 F.3d at 474.
[13] Kerr, 95 F.3d at 477.
[14] Kerr, 95 F.3d at 477.
[15] The Lee court held that a nonsectarian prayer delivered by a rabbi at a middle school graduation ceremony violated the Establishment Clause because it lent the ceremony "the imprint of the State and thus put school-age children who objected in an untenable position" and noted that "the concern may not be limited to the context of schools." Lee, 505 U.S. at 590-92, 112 S.Ct. 2649.
[16] Kerr, 95 F.3d at 479.
[17] Kerr, 95 F.3d at 479.
[18] Kerr, 95 F.3d at 479.
[19] Kerr, 95 F.3d at 479-80.
[20] The only difference is that in AA's first and twelfth step, the word "alcohol" and "alcoholics" appear instead of "addiction" and "addicts" contained in the corresponding steps in NA. The references to "God" and "Him" remain the same.
[21] References to God in the AA twelve steps include making a decision to "turn our will and our lives over to the care of God as we understood him," confessing to God "the nature of our wrongs," appealing to God "to remove our shortcomings," and seeking "through prayer and meditation" to make "contact with God" and achieve "knowledge of His will for us." Reply to Response of DOC, Appendix "G".
[22] Kerr, 95 F.3d at 480 (noting that courts have upheld incidental references to God under the Establishment Clause) (citation omitted).
[23] See Reply to Response of the Department of Corrections, Appendix E.
[24] Kerr, 95 F.3d at 480 (noting that only choice available to inmate was the NA program); Griffin, 88 N.Y.2d at 686, 649 N.Y.S.2d 903, 673 N.E.2d at 105 (where NA and AA were the sole alcohol and drug rehabilitation programs at agnostic inmates' correctional facility, violation of Establishment Clause for State to deprive inmate of eligibility for expanded family visitation because of inmate's refusal to attend AA and NA meetings); Warner, 115 F.3d at 1076 ("because sending Warner to AA as a condition of his probation, without offering a choice of other providers, plainly constituted coerced participation in a religious exercise, we find aviolation of the Establishment Clause"); O'Connor, 855 F.Supp. at 308 (finding no Establishment Clause violation where person convicted of drunk driving has a choice over what programs to attend in order to satisfy probation terms, including self-help programs that do not use any concept of "spirituality" to treat alcohol-related problems).
[25] Decl. of Donna Byrnes in Supplemental Brief of DOC.
[26] Decl. of Arturio Garcia in Supplemental Response of DOC.
[27] Warner v. Orange County Dept. of Probation, 827 F.Supp. 261, 265 (1993) (establishment clause doctrine requires not simply the absence of favoritism among religions but of religion over non-religion as well; even atheism falls within the protection of the First Amendment).
[28] See WAC 289-22-200.
[29] See RCW 70.48.020(2), (2), (3), & (4) (italics ours).
[30] See RCW 72.09.050 (italics ours).
[31] RCW 72.09.130(1) states that

[DOC] shall adopt, by rule, a system that clearly links an inmate's behavior and participation in available education and work programs with the receipt or denial of earned early release days and other privileges. The system shall include increases or decreases in the degree of liberty granted the inmate within the programs operated by the department, access to or withholding of privileges available within correctional institutions, and recommended increases or decreases in the number of earned early release days that an inmate can earn for good conduct and good performance.