**Charles Edward TURNER, Plaintiff,**

v.

**R. HICKMAN, et al., Defendants.**

**No. CIVS–99–1869 FCDKJMP.**

United States District Court, E.D. California.

Sept. 30, 2004.

Harry Arthur Olivar, Quinn Emanuel Urquhart Oliver and Hedges, Los Angeles, CA, for Plaintiff.

Constance L. Picciano, Attorney General's Office for the State of California, Sacramento, CA, Michael G. Lee, Attorney General's Office for the State of California, Sacramento, CA, for Defendants.

## ORDER

DAMRELL, District Judge.

Plaintiff, a state prisoner proceeding with counsel, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262.

On August 4, 2004, the magistrate judge filed findings and recommendations herein, which were served on all parties and which contained notice to all parties that any objections to the findings and recommendations were to be filed within twenty days. Defendants have filed objections to the findings and recommendations.[1]

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(c) and Local Rule 72–304, this court has conducted a *de novo* review of this case. Having carefully reviewed the entire file, the court finds the findings and recommendations to be supported by the record and by proper analysis.

Accordingly, IT IS HEREBY ORDERED that:

1. The findings and recommendations filed August 4, 2004 are adopted in full;

2. Plaintiff's March 5, 2004 motion for summary judgment is granted;

3. Defendants Perez, Van Court, Baker, Guaderrama, their superiors, agents, co-employees and successors to state office are enjoined from considering plaintiff's refusal to participate in Narcotics Anonymous at any point in time as a basis for denying plaintiff parole;

4. Defendant Hickman, and his successors, are ordered to expunge all references to plaintiff's failure to attend Narcotics Anonymous from any file maintained by the California Department of Corrections; and

5. This case is closed.[2]

## ORDER AND FINDINGS AND RECOMMENDATIONS

MUELLER, United States Magistrate Judge.

Plaintiff is a state prisoner proceeding with counsel in an action for violation of civil rights under 42 U.S.C. § 1983. Plaintiff's and defendants'[1] March 5, 2004 motions for summary judgment are now before the court. Oral argument was heard

---

1. With their objections, defendants submit the declaration of Marvin E. Speed II. While a district court judge may receive additional evidence under 28 U.S.C. § 636(b)(1)(c) when determining whether to accept or reject a magistrate judge's findings and recommendations, the court exercises its discretion and declines to consider the Speed declaration as counsel for defendants has not provided any reason why the declaration was not submitted during the approximately five month period defendants' and plaintiff's motions for summary judgment were pending before the magistrate judge issued her findings and recommendations. *U.S. v. Howell*, 231 F.3d 615, 622–23 (9th Cir.2000), *cert. denied*, 534 U.S. 831, 122 S.Ct. 76, 151 L.Ed.2d 40 (2001) (district court judge has discretion to reject evidence submitted after findings and recommendations have issued).

2. In her findings and recommendations, the magistrate judge recommended that plaintiff's counsel be awarded attorneys fees and costs under 42 U.S.C. § 1988. If plaintiff seeks fees and / or costs under § 1988, or any other applicable statute or rule, plaintiff shall file a motion in accordance with the applicable rules.

1. This action currently is proceeding against: (1) Margarita Perez, Chairman of the California Board of Prison Terms; (2) R. Hickman, Secretary of the California Youth and Adult Correctional Agency; (3) Arthur Van Court, Board of Prison Terms Commissioner; (4) Steven Baker, Former Board of Prison Terms Commissioner; and (5) M. Guaderrama, Board of Prison Terms Commissioner.

with respect to both motions on April 7, 2004.[2]

## I. *Plaintiff's Claim*

Plaintiff asserts that defendants, acting in their official capacities as employees of the State of California, have established religion in violation of the First Amendment by demanding that he participate in Narcotics Anonymous (NA) in order to be eligible for consideration for parole. Plaintiff claims defendants have expressly conditioned plaintiff's being eligible for release on parole, in part, upon plaintiff's participation in NA. Plaintiff seeks declar-

atory relief and an injunction: (1) barring defendants from using plaintiff's non-attendance at NA meetings as a basis for denying plaintiff parole; and (2) ordering expungement from plaintiff's prison records of any references to plaintiff's refusal to attend NA.[3] Plaintiff also seeks attorney's fees and costs under 42 U.S.C. § 1988.

## II. *Background*[4]

Plaintiff currently is serving a sentence of fifteen-years-to-life imprisonment in the California Department of Corrections for second degree murder. (Def'ts' Mot.

---

**2.** Following oral argument, defendants filed a supplement to their motion for summary judgment, plaintiff has responded, and defendants have replied. The undersigned has considered these filings in making the following findings and recommendations.

**3.** In his amended complaint, plaintiff also asks for an order enjoining defendants from retaliating against plaintiff for filing this suit. However, plaintiff does not request this form of relief in his motion for summary judgment, or identify this form of relief in the proposed judgment he submitted on March 5, 2004. Accordingly, the court deems plaintiff's request for an injunction concerning retaliation abandoned.

**4.** Defendants submitted five "sets" of exhibits with pages numbered between 1 and 1803, in support of their motion for summary judgment. On July 7, 2004, defendants submitted their authentication of the documents by Debbie Falconer, Mike Brewer and Marvin Speed. Plaintiff asserts that defendants have not attempted to authenticate all of the documents they submitted and that the documents purportedly authenticated by Falconer and Speed are not properly authenticated. July 16, 2004 Resp. To Def'ts' Declarations.

The Falconer, Brewer and Speed declarations do not cover page numbers 16–118 and 257–262. But these pages consist of the transcript and index of the deposition of Sol Irving, not including the exhibits, which are authenticated. Plaintiff filed a copy of the complete transcript on March 5, 2004, with the certification as true and correct by the court reporter who was present at the deposi-

tion. Under Federal Rule of Evidence 901(a), the transcript has been sufficiently authenticated.

The declarations provided also do not cover page numbers 532–542, which comprise defendants' January 14, 2004 response to plaintiff's request to produce. The court does not consider this document in resolving either plaintiff's or defendants' motions for summary judgment as the document simply indicates which documents were turned over in discovery and objections to producing certain documents.

With respect to the documents defendants did attempt to authenticate, Falconer and Speed both indicate in their declarations that they are employed by the State of California, that they are custodians of certain records and that the records referenced in their declarations are copies of state records in their custody. Federal Rule of Evidence 901(b)(7) provides that a document is deemed authenticated if it is a "public record, report, statement, or data compilation, in any form, [which] is from the public office where items of this nature are kept." Furthermore, the Advisory Committee notes to Rule 901(b)(7) include the observation that "public records are regularly authenticated by proof of custody, without more." *Cf. Orr v. Bank of America*, 285 F.3d 764, 774 (9th Cir.2002); *United States v. Wilson*, 690 F.2d 1267, 1275–76 (9th Cir.1982).

In light of the above, and with the exception of plaintiff's objection to page numbers 532–542, plaintiff's March 24, 2004 objection to defendants' exhibit sets 1–5 is overruled.

Summ. J., Ex. Set 1 at 1.) Plaintiff was convicted in 1979. (*Id.*) Plaintiff was considered for, and denied parole in 1986 (*id.,* Ex. Set 2 at 656, 759:7–12), 1988 (*id.* at 767, 873:8–10), 1989 (*id.,* Ex. Set 3 at 880, 943:7–8), 1990 (*id.* at 951, 996:26–27), 1991 (*id.* at 1003, 1078:7–9), 1992 (*id.* at 1140:7–12), 1994 (*id.* at 1216:7–11), 1995 (*id.,* Ex. Set 4 at 1267:5–9), 1997 (*id.* at 1329:8–15) and 2002 (*id.* at 1394:8–15).

At several hearings, members of the Board of Prison Terms either cited plaintiff's failure to participate in NA as a factor the Board considered in denying plaintiff parole, or the Board informed plaintiff that to be considered for parole at the next hearing, he should participate in NA:

*1986*

In readiness for prisoner's next parole consideration hearing one year from now—he is to . . . continue to participate in self-help programming—such as A.A. / N.A. . . . *Id.,* Ex. Set 2 at 761:13–762:3. [J]ust continue involvement in the Narcotics Anonymous. . . . *Id.* at 763:23–24.

*1990*

We're asking that you remain disciplinary free. That you continue to upgrade vocationally and educationally and participate in NA. . . *Id.,* Ex. Set 3 at 998:10–12.

*1991*

It's a one year denial. We're going to recommend that you remain disciplinary free, that you continue your present programming, however, include consistent participation in N.A. . . . *Id.* at 1079:17–19.

*1992*

However, he appears to have somewhat less understanding of his past involvement with drugs and could likely make further gains to this area by further participation in the twelve-step programs, with emphasis upon getting a

sponsor to help him assist in this process. *Id.* at 1117:3–8.

*1994*

We also want you to continue to participate in self-help as a minimum, particularly focusing on the 12–step programming. And the self-help one-on-one family counseling seems to be good. So we would encourage you to do that, but we don't require it. *Id.* at 1218:6–10.

*1995*

We are recommending that you remain disciplinary free, that you upgrade vocationally, and you participate in AA and NA and any available therapy programs that come along. *Id.* at 1269:9–13.

*1997*

PRESIDING COMMISSIONER BARKER: Let me explain it to you so it's real simple. Do you want to get out of prison?

INMATE TURNER: Yes.

PRESIDING COMMISSIONER BAKER: Go to NA, learn those Twelve Steps, work those Twelve Steps. And this Board will not accept any excuses. Can I make it any simpler than that? Do you understand what I am telling you?

INMATE TURNER: NA. So my release is dependent upon me going to NA?

PRESIDING COMMISSIONER BAKER: That's——.

INMATE TURNER: Is that what you're saying?

PRESIDING COMMISSIONER BAKER: Just because you go to NA doesn't necessarily mean you get out of prison. But if you don't go to NA, like you have been told in the past, if you don't go to NA, I would never let you out of prison, ever . . . *Id.,* Ex. Set 4 at 1313:10–27. NA. Mandatory. . . You've been told before to go to NA. I'm telling you again:

You've got to go to NA. That's got to be your number one priority. Now it's up to you... *Id.* at 1314:19–1315:3.

I know you're doing a lot of other things. I'm telling you that that's a number one priority. This Board is going to look at that every single time you come in here. You've accomplished the other things that we want you to do. I can't make it any plainer, I really can't. NA is just mandatory for you. *Id.* at 1316:4–10.

The record before the court, most notably the record of plaintiff's parole proceedings, shows that plaintiff has been involved with NA sporadically since his first parole denial. In at least as early as 1997, plaintiff started to indicate that he felt participation in NA conflicts with his religious beliefs and, therefore, plaintiff stopped participating in NA:

PRESIDING COMMISSIONER BAKER: How long have you been going to NA?

INMATE TURNER: In '95 was—in '96 is the last time I went.

PRESIDING COMMISSIONER BAKER: How come you're not going now?

INMATE TURNER: Because I picked up my spiritual beliefs and I—I take the Bible. That's what I read. I study the Bible. I believe that God is the one that's going to bring me back around and keep me strong and keep me centered, because that's how I started. I started through God, so that's how I will finish getting back into the Bible and staying there.

*Id.* at 1312:7–19.

When plaintiff was deposed for this action he indicated that he does not believe it is appropriate to invoke religion and especially belief in God in a substance abuse program. Tr. of Pl.'s Dep. at 22:12–25, 28:3–30:18.

## III. *Legal Standards*

### A. *Summary Judgment*

Summary judgment is appropriate when it is demonstrated there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' ") *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322, 106 S.Ct. 2548. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323, 106 S.Ct. 2548.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11, 106 S.Ct. 1348. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir.1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any. Fed.R.Civ.P. 56(c). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff'd*, 810 F.2d 898, 902 (9th Cir.1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

### B. *Establishment Clause*

■ The First Amendment, made applicable to the states through the Fourteenth Amendment, forbids states from establishing religion or prohibiting the free exercise of one's religious beliefs. In interpreting and applying the Establishment Clause, the Supreme Court has developed a substantial body of jurisprudence, and articulated various tests for determining First Amendment violations, depending on the type of case. The two circuit courts that have addressed facts analogous to the facts of this case have applied what has been referred to as the "coercion test" emanating from *Lee v. Weisman*, 505 U.S. 577, 587, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), in which the Court observed, "[i]t is beyond dispute that, at a minimum, the Constitution guarantees that government

may not coerce anyone to support or participate in religion, or its exercise." [5]

In *Kerr v. Farrey,* 95 F.3d 472 (7th Cir.1996), plaintiff was an inmate with a chemical dependence problem who was required to "observe" NA meetings as part of his rehabilitation program. NA was the only substance abuse program made available to inmates. The penalty for nonattendance was a higher security risk classification and negative effects on parole eligibility. *Id.* at 474. The plaintiff objected to the requirement because he disagreed with its "view of God [as] in conflict with his own belief about free will; more generally, he found it offensive to his personal religious beliefs." *Id.* The Seventh Circuit determined that

. when a plaintiff claims that the state is coercing him or her to subscribe to religion generally, or to a particular religion, only three points are crucial: first, has the state acted; second, does the action amount to coercion; and third, is the object of the coercion religious or secular?

*Id.* at 480.

Similarly, in *Warner v. Orange County Dep't of Probation,* 115 F.3d 1068 (2d Cir. 1997), *reaff'd after remand,* 173 F.3d 120 (2d Cir.1999), plaintiff was a probationer with an alcohol problem who was required to attend Alcoholics Anonymous (AA) as a condition of probation. AA was specified as the required program by the sentencing judge in his order. The penalty for noncompliance was revocation of probation and imprisonment. *Id.* at 1075, 1076. After attending AA sessions for several months, plaintiff complained to his probation officer that, as an atheist, he found the meetings objectionable. *Id.* at 1070. In response, the probation officer directed participation in more AA meetings and location of an AA sponsor to facilitate his ongoing participation in the program. The Second Circuit identified the applicable Establishment Clause test by quoting *Lee v. Weisman:*

The Supreme Court has repeatedly made clear that at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which "establishes a [state] religion or religious faith, or tends to do so."

*Id.* at 1074–75 (internal quotations omitted); *compare DeStefano v. Emergency Housing Group, Inc.,* 247 F.3d 397, 406–07 (2d Cir.2001) (identifying *Lemon* as test in case where plaintiff conceded absence of

---

5. Other Establishment Clause tests include: the three-part *Lemon* test, *see Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (state practice is unconstitutional if (1) it lacks a secular purpose; (2) its primary effect either advances or inhibits religion; or (3) it excessively entangles government with religion); and the "endorsement test," *County of Allegheny v. ACLU,* 492 U.S. 573, 594, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (asking whether the government endorses religion by means of the challenged action). These tests and their applications, along with that of the coercion test, are discussed at some length in the cases discussed herein, including *Kerr v. Farrey,* 95 F.3d 472, 477–79 (7th Cir.1996) (characterizing the coercion test as applicable to "outsider" cases in which religion is being imposed on an unwilling subject, and the *Lemon* test as applicable to "insider" cases in which existing religious groups seek some benefit from the state or in which the state wishes to confer a benefit on such groups), and also in *Bausch v. Sumiec,* 139 F.Supp.2d 1029, 1033–34 (E.D.Wis.2001) (describing the *Lemon,* endorsement and coercion tests as "complementary (and occasionally overlapping)"). *Compare Warner v. Orange County Probation Dep't,* 115 F.3d 1068, 1076 n. 8 (2d Cir.1996) (observing that regardless of what tests may be applicable, the Supreme Court (in *Lee* ) has "made clear that 'at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise.' ").

coercion, and distinguishing *Warner* on absence of coercion grounds).[6]

Since *Kerr* and *Warner*, district court decisions resolving challenges to required participation in NA or AA have followed the reasoning of these cases. *See Ross v. Keelings*, 2 F.Supp.2d 810, 817–18 (E.D.Va.1998) (applying "*per se* rule adopted by the Second and Seventh Circuits [in *Warner* and *Kerr* ]" through adoption of three-part coercion test in case in which plaintiff claimed Establishment Clause violation based on requirement that he participate in program that emphasized religion or lose good conduct allowances); *Nusbaum v. Terrangi*, 210 F.Supp.2d 784, 787–88 (E.D.Va.2002); *Bausch v. Sumiec*, 139 F.Supp.2d 1029 (E.D.Wis.2001) (application of *Kerr's* 3–part coercion test in case where plaintiff, an atheist, objected to requirement that he participate in residen-

tial treatment program based on NA principles or have parole revoked).[7]

■ Here, where the paramount question is whether the government can force someone to engage in religious practices, regardless of whether those practices are in some ways consistent with his beliefs,[8] the coercion test is the most appropriate to apply.

## IV. Analysis

### A. Application of Coercion Test

■ The first element of the coercion test, the requirement of state action, is met in that it is clear the parole board has expressly told plaintiff he needs to participate in NA in order to be eligible for parole. *Kerr*, 95 F.3d at 479 (prison authorities' requiring inmate to "observe" NA satisfied first element); *Warner*, 115

---

**6.** *Compare also Rauser v. Horn*, 241 F.3d 330 (3d Cir.2001) (in case reviewing grant of summary judgment on retaliation claim, court notes without full discussion, that among issues not challenged on appeal is district court's adoption of magistrate judge's recommendation that defendant prison officials' summary judgment motion be denied "because the AA/NA requirement violated the Establishment Clause as a matter of law").

**7.** In *Warburton v. Underwood*, 2 F.Supp.2d 306, 315–18 (W.D.N.Y.1998), decided before *Warner* was reaffirmed on remand, the court applied the *Lemon* test as "tempered" by *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), to find that plaintiff in that case stated an Establishment Clause claim for purposes of service. At least three district court decisions issued before *Kerr* and *Warner* applied the *Lemon* test. *See O'Connor v. California*, 855 F.Supp. 303, 306–08 (C.D.Cal.1994) (noting that "[s]ignificant to this Court's decision is that the individual has a *choice* over what program to attend" (emphasis in original)); *Scarpino v. Grosshiem*, 852 F.Supp. 798, 805 (S.D.Iowa 1994) (noting *Lemon's* status at the time as "still the law, [as it] was at the time of events upon which the plaintiff's claims are based"); *Boyd v. Coughlin*, 914 F.Supp. 828, 831–33 (N.D.N.Y. 1996) (identifying *Lemon* as the "general test

for determining if a statute or practice violates the Establishment Clause," while stating it is "tempered somewhat by the context of this case-an inmate challenging a Department of Corrections directive," in which case even if a regulation impinges on a Constitutional right "the regulation is valid if it is reasonably related to legitimate penological interests").

**8.** Defendants stress that plaintiff's religious beliefs are not distinguishable from those required for NA participation, and the record is not well developed as to plaintiff's position that even though he believes in God, he is uncomfortable with NA's approach. *See* Tr. of Pl.'s Dep. at 22:20–25, 29:13–31:3; *cf.* Def'ts' Mot. Summ. J., Ex. Set 3 at 1312:7–19; Def'ts' Sep. Statement of Undisputed Material Facts in Supp. Mot. Summ. J. at 4:9–11 (plaintiff's participation in NA ceased because "he did not like insincere persons invoking God's name"). In this case arising out of the Establishment Clause, however, the focus is properly on whether plaintiff is affected by the parole policy regarding NA, and not on whether "particular religious freedoms are infringed." *School Dist. of Abington Tp., Pa. v. Schempp*, 374 U.S. 203, 225 n. 9, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963).

F.3d at 1076 (probationer needed to cooperate by attending AA).

The second element, does the state action amount to coercion, also is met in that plaintiff was told if he did not participate in NA, he would not be eligible for consideration for parole. Answer ¶ 15; *compare Kerr*, 95 F.3d at 479 (classification to higher security risk and "adverse notations in prison record that could affect [ ] chances for parole" constituted "significant penalties"); *Warner*, 115 F.3d at 1076 (probationer's failure to cooperate could lead to incarceration and his avoidance of "indoctrination despite the pressure he faced does not make the [ ] program any less coercive ..."); *but see Garvin v. Terhune*, 157 F.Supp.2d 416 (D.N.J.2001), *aff'd*, 35 Fed.Appx. 356 (2002) (determining "nothing about the Nu Way Program [formerly based on AA and NA] is coercive or punitive" even though plaintiff's refusal to participate resulted in denial of preferable status; noting court's unfamiliarity with any "provision of the Constitution [ ] violated because a person is compelled to participate in a drug treatment which he might not need," and declining to micromanage prison officials' decisions regarding treatment and education programs for inmates).

As to the third element, whether the object of the coercion is religious or secular, plaintiff argues in essence that the "God" of the NA program is a monotheistic, higher power, and there is no getting around "His" religious nature. Defendants argue that NA's "God" is nonsectarian, and that participants in NA are free to define "God" in any way they wish; by way of example, at oral argument, defendants' counsel suggested participants could identify "God" as anything, a lake, a pond or even a doorknob. *Cf.* Def'ts' Ex. Set 1

at 27:20–22 (Tr. of Dep. of Sol Irving, administrator for substance abuse program, explaining that "God is what that person believes is a higher power ... [it] could be that doorknob over there ...").

Although NA's literature says it is "not a religious program," Def'ts' Ex. Set 5 at 1516, NA unequivocally and wholeheartedly asserts that belief in "God" is a fundamental requirement of participation. *Id.* at 1510, 1513, 1514; Declaration of Charles Edward Turner (filed Mar. 5, 2004) ("Turner Decl."), Ex. B at 49–57. The NA program (like AA) prescribes the completion of twelve steps that cannot be completed without expression of a belief in "God, as we understand him." Def'ts' Ex. Set 5 to Mot. Summ. J. at 1533; *see also id.* at 1541, 1546, 1552, 1553; *cf.* Def'ts' Ex. Set 1 at 160–66 (chapter of AA handbook entitled "We Agnostics"). All of the NA meetings plaintiff attended began with either the "Lord's Prayer" or the "Serenity prayer."[9] Turner Decl. at 2:16–17; *see also* Tr. of Pl.'s Dep. at 24:18–22.

As disclosed by the record, the NA program plaintiff was required to attend is fundamentally religious, based as it is on the concept of a higher power to which participants must submit. *See* Black's Law Dictionary (8th ed.2004) (defining "religion" as a "system of faith and worship usu. involving belief in a supreme being and usu. containing a moral or ethical code; esp., such a system recognized and practiced by a particular church, sect, or denomination...."). The suggestion that plaintiff could meet the parole board's requirement of successful completion of NA by "learn[ing] those 12 steps, work[ing] those 12 steps," by expressing a belief in "God" while reflecting on something completely at odds with all traditional notions

---

**9.** Both prayers presuppose belief in a monotheistic higher power. *See School Dist. Of Abington Tp., Pa. v. Schempp*, 374 U.S. 203, 223, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (re Lord's Prayer); Def'ts' Ex. Set. 1 at 234 (Serenity Prayer).

of "God," simply is not creditable under the circumstances of this case. *See Kerr,* 95 F.3d at 480 (rejecting notion that "concept of God could include the non-religious idea of willpower within the individual," where case was not one in which religious references were merely "incidental"); *Warner,* 115 F.3d at 1076 (rejecting nonsectarian argument made by defendants because, *inter alia,* "the claim that nonsectarian religious exercise falls outside the First Amendment's scrutiny has been repeatedly rejected by the Supreme Court"). *See also Warburton,* 2 F.Supp.2d at 318 ("The emphasis placed on 'God,' spirituality and faith in a 'higher power' by twelve-step programs such as A.A. or N.A. clearly supports a determination that the underlying basis of these programs is religious ..."); *Cox v. Miller,* 296 F.3d 89, 94, 108–09 n. 11 (2d Cir.2002), *cert. denied,* 537 U.S. 1192, 123 S.Ct. 1273, 154 L.Ed.2d 1026 (2003) (in reviewing claim of cleric-congregant privilege in habeas case, summarizing history of AA and concluding that AA's activities "must be treated as religious for purposes of [ ] Establishment Clause analysis"); *but see Stafford v. Har-*

*rison,* 766 F.Supp. 1014, 1016–17 (D.Kan. 1991) (pre-*Warner* and -*Kerr* decision commenting that "[w]hile the spiritual nature of [AA] cannot be denied, the court is not persuaded this program may properly be characterized as a religion. The central text of the program ... refutes such a suggestion.... Further, the belief in a Supreme Being 'cannot be sustained as a distinguishing characteristic of religion.'" (citations omitted)).

Based on the above, the undersigned recommends that this court join the Second and Seventh Circuits in their determination that requiring participation in NA is an establishment of religion prohibited by the First Amendment.[10] *See Warner,* 115 F.3d at 1076–77; *Kerr,* 95 F.3d at 480.

B. *Defendants' Opposition to Plaintiff's Motion*

Plaintiff argues in his motion for summary judgment, consistent with the allegations in his amended complaint, that he has been denied a parole date, in part, due to his refusal to participate in NA. In their answer, defendants admit this allegation.[11] Answer ¶ 15. However, defendants op-

---

**10.** Whether or not NA is effective in helping participants achieve sobriety and overcome addiction, as it may well be, is not a question before the court on the parties' motions.

**11.** As noted above, plaintiff was informed at his 1997 parole hearing by defendant Baker: "Let me explain it to you so it's real simple. Do you want to get out of prison? ... Go to [NA], learn those Twelve Steps, work those Twelve Steps. And this Board will not accept any excuses. Can I make it any simpler than that? Do you understand what I am telling you? ... [I]f you don't go to [NA], like you've been told in the past, if you don't go to [NA], I would never let you out of prison, ever." Turner Decl., Ex. A at 7:10–27.

In their reply to plaintiff's motion for summary judgment, defendants argue that plaintiff could have completed some other self-help program to satisfy the parole board's requirement that plaintiff complete NA. Reply at

2:24–28. Considering, *inter alia,* the clarity of defendant Baker's admonition, and that defendants admitted in their answer that plaintiff has been denied parole, in part, due to his refusal to complete NA, this argument is not well taken. Furthermore, defendants fail to point to anything in the record indicating any specific member of the parole board or anyone with any power to determine whether plaintiff would be granted parole ever told plaintiff he could substitute completion of some other program for participation in NA. While on May 27, 2004, defendants submitted evidence indicating that plaintiff has qualified for placement in a secular substance abuse program at his prison, but has indicated that he does not wish to enroll in the program, Def'ts' Mot. For Leave To File Supplement To Mot. Summ. J., Ex. A, defendants have not presented any evidence showing the parole board has provided plaintiff with alternatives to NA.

pose plaintiff's motion on the grounds that: (1) plaintiff is a Christian and therefore lacks standing to raise his Establishment Clause claim; (2) injunctive relief is not appropriate because, in defendants' view, NA is not a religious program; and (3) plaintiff's claim is moot because plaintiff could complete a secular narcotic abuse program now made available to inmates. Defendants' second argument is disposed of for the reasons discussed above.

 As for defendants' first argument, upon further consideration and review of relevant authority, the undersigned determines that plaintiff has standing because he is "directly affected" by the policies and practices his complaint challenges. *See School Dist. Of Abington Tp., Pa. v. Schempp,* 374 U.S. 203, 225 n. 9, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) ("requirements for standing to challenge state action under Establishment Clause, unlike those relating to the Free Exercise Clause, do not include proof that particular religious freedoms are infringed"; rather those directly affected have interests that "surely suffice" for standing).

 Regarding defendants' third argument, assuming there are now secular alternatives to NA available to plaintiff,[12] which plaintiff disputes, plaintiff's claims and requests for injunctive relief still are not moot. Mere voluntary cessation of illegal conduct does not moot a case; if it did, courts would be compelled to leave defendants free to return to their old ways. *Norman–Bloodsaw v. Lawrence Berkeley Laboratory,* 135 F.3d 1260, 1274 (9th Cir.1998) (quotation omitted). Defendants admit that, in the past, they required plaintiff to complete NA. Furthermore, de-

fendants fail to point to anything in the record making it a genuine issue of material fact that defendants only required plaintiff to complete NA because there was no secular alternative. Therefore, the present existence of a secular alternative to NA does not moot plaintiff's claims or his requests for injunctive relief as it is not clear that the existence of a secular alternative will stop defendants from requiring that plaintiff complete NA in the future or prevent defendants from considering plaintiff's past failure to complete NA at future parole hearings.[13] *Compare Rauser,* 241 F.3d at 332 (noting adoption of magistrate judge's recommendation that defendants be ordered to allow plaintiff to decline to participate in religious programs and that all file entries adversely affecting parole eligibility be expunged; injunctive relief not mooted by defendants' offering plaintiff a non-religious alternative after he filed complaint).

### C. Declaratory Relief

Regarding declaratory relief, "the two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *McGraw–Edison Co. v. Preformed Line Products Company* 362 F.2d 339, 342 (9th Cir.1966). Assuming the injunctive relief described above is granted, the legal relations of the parties at issue in this case will be settled, as will the legal issues.

---

12. *See* note 11 *supra.*

13. On June 4, 2004, plaintiff submitted a declaration from plaintiff's counsel indicating that at plaintiff's 2004 parole hearing, the parole board asked "[plaintiff] to talk about

some of NA's Twelve Steps, and commented unfavorably on [plaintiff's] inability to recite the steps he was talking about from memory." Pl.'s Resp. To Def'ts' Mot. For Leave To File Supplement To Mot. Summ. J. at 3:15–17.

### D. *Defendants' Motion*

Defendants' motion for summary judgment raises the same issues discussed with respect to plaintiff's motion. Def'ts' Notice of Mot. and Mot. Summ. J. (raising standing, availability of secular alternatives and non-religious nature of NA as grounds). Because the issues are resolved above, they need not be discussed separately.

### V. *Conclusion*

Based on the forgoing, the court will recommend that: (1) plaintiff's motion for summary judgment be granted; (2) defendants' motion for summary judgment be denied; (3) defendants Perez, Van Court, Baker, Guaderrama, their superiors, agents, co-employees and successors to state office, be enjoined from considering plaintiff's refusal to participate in Narcotics Anonymous at any point in time as a basis for denying plaintiff parole; (4) defendant Hickman, and his successors, be ordered to expunge all references to plaintiff's failure to attend Narcotics Anonymous from any file maintained by the California Department of Corrections; and (5) plaintiff's counsel be awarded attorney's fees and costs under 42 U.S.C. § 1988.

The court will not recommend that declaratory relief be granted.

Finally, the court will order that the dates established in the court's September 23, 2003 scheduling order for the filing of pretrial statements, pretrial conference and trial be vacated.

In accordance with the above, IT IS HEREBY ORDERED that the dates established in the court's September 23, 2003 scheduling order for the filing of pretrial statements, pretrial conference and trial are vacated.

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's March 5, 2004 motion for summary judgment be granted;

2. Defendants Perez, Van Court, Baker, Guaderrama, their superiors, agents, co-employees and successors to state office be enjoined from considering plaintiff's refusal to participate in Narcotics Anonymous at any point in time as a basis for denying plaintiff parole;

3. Defendant Hickman, and his successors, be ordered to expunge all references to plaintiff's failure to attend Narcotics Anonymous from any file maintained by the California Department of Corrections;

4. Plaintiff's counsel be awarded attorneys fees and costs under 42 U.S.C. § 1988;

5. Defendants' March 5, 2004 motion for summary judgment be denied; and

6. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

August 4, 2004.